2007 WY 136

**Keith Allan LEYVA, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 06–233.**

Supreme Court of Wyoming.

Aug. 23, 2007.

Representing Appellant: Diane M. Lozano, State Public Defender; Donna D. Domonkos, Appellate Counsel; Ryan R. Roden, Senior Assistant Appellate Counsel; Kirk A. Morgan, Assistant Appellate Counsel. Argument by Mr. Morgan.

Representing Appellee: Patrick J. Crank, Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General. Argument by Mr. Pauling.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

[¶ 1]   Mr. Leyva appeals his conviction on two felony counts, one for burglary and one for third offense illegal possession of a controlled substance.  We affirm.

## ISSUES

[¶ 2] Mr. Leyva and the State agree on the two issues to be resolved in this case, and we state them as follows:

1. Did the district court improperly withdraw its acceptance of Mr. Leyva's guilty plea?
2. Did the district court err in allowing evidence of uncharged misconduct to be admitted at trial?

## FACTS

[¶ 3] On September 8, 2005, Rawlins police received a phone call from Kelly King, who reported that a television set had been taken from his apartment. When officers arrived at the apartment complex, they observed a parked vehicle with a television set in the front passenger seat. At the officers' request, Mr. King's son identified the television as the one taken from his father's apartment. Soon thereafter, the officers saw two individuals getting into the vehicle. The individuals turned out to be Erin Setright, who owned the vehicle, and Mr. Leyva. Ms. Setright told the officers that Mr. Leyva had the television set with him when he asked her for a ride.

[¶ 4] The officers detained Mr. Leyva on suspicion of stealing the television set. Then, after learning of an outstanding warrant, they placed Mr. Leyva under arrest. Their pat down search of Mr. Leyva revealed, among other items, a knife, a brass pipe with marijuana residue, and a plastic bag containing a minimal amount of methamphetamine residue. Mr. Leyva told the police that he had borrowed the television set from Mr. King. He also claimed that he had borrowed the pants he was wearing from Mr. King. The brass pipe was not his, he said, and must have been in the pocket when he borrowed the pants that morning. The knife was his, he admitted, but with the inconsistent explanation that he had put the knife in the pocket of the pants the night before.

[¶ 5] Mr. Leyva was charged with two felony counts, one for burglary involving the television set, and one for possession of a controlled substance (methamphetamine), third offense. Before trial, Mr. Leyva and the State reached a plea agreement, under which Mr. Leyva would plead guilty to the methamphetamine charge and the State would dismiss the burglary charge. The State also agreed to recommend a sentence of three to five years, and not to oppose probation if it was recommended in the presentence investigation report. At the change of plea hearing, the district court questioned Mr. Leyva, and found that an adequate factual basis for the plea had been established, and that the plea was entered freely and voluntarily after consultation with competent counsel. The district court took the plea agreement under advisement, ordered a presentence investigation, and delayed the sentencing until after the presentence investigation report was received.

[¶ 6] At the subsequent sentencing hearing, the district court confirmed that Mr. Leyva wished to maintain his guilty plea, then accepted the plea and pronounced a sentence of three to five years in the state penitentiary, with the recommendation that Mr. Leyva be referred to a youth offender program commonly known as "boot camp." Upon further questioning, however, Mr. Leyva indicated his belief that there had been a misunderstanding about the sentence. He expected to be put on probation, not referred to boot camp. Because of the misunderstanding, and at Mr. Leyva's request, the court allowed him to withdraw the guilty plea on the count of illegal possession of methamphetamine. Mr. Leyva's case was then set for trial on the two original counts, burglary and illegal possession of methamphetamine.

[¶ 7] During the trial, Mr. Leyva objected to the State's evidence that he was in possession of a brass pipe containing marijuana residue at the time of his arrest. The district court admitted the evidence. The jury subsequently returned a verdict of guilty on both charges. Mr. Leyva was sentenced to three to five years in the state penitentiary, with the recommendation that he be referred to boot camp. Mr. Leyva filed this timely appeal.

## DISCUSSION

1. **Did the district court improperly withdraw its acceptance of Mr. Leyva's guilty plea?**

[¶ 8] In reviewing a district court's decision to accept or reject a guilty

plea, this Court generally applies an abuse of discretion standard. *Herrera v. State*, 2003 WY 25, ¶ 10, 64 P.3d 724, 727 (Wyo.2003). In this case, however, Mr. Leyva made no objection to the district court's decision, and the State urges us to apply a plain error standard. All of the Wyoming cases we have found on this issue involve appeals of a trial court's denial of a defendant's motion to accept or withdraw a plea. Because such a denial is necessarily contrary to the defendant's motion, none of these cases involves a defendant's failure to object, and none applies the plain error standard of review. However, in analogous cases involving sentencing under a plea agreement, we have applied the plain error standard when the defendant did not enter any objection. *See, e.g., Meyers v. State*, 2005 WY 163, ¶ 16, 124 P.3d 710, 716 (Wyo.2005). We find the plain error standard appropriate, because Mr. Leyva's lack of objection deprived the district court of an opportunity to consider or correct the alleged error. In the unusual circumstances of this case, we will review for plain error, using a familiar three-step process:

> "First, the record must be clear as to the incident which is alleged as error. Second, the party claiming the error amounted to plain error must demonstrate that a clear and unequivocal rule of law was violated. Finally, that party must prove a substantial right has been denied him and, as a result, he has been materially prejudiced."

*Id.* (quoting *Wilks v. State*, 2002 WY 100, ¶ 7, 49 P.3d 975, 981 (Wyo.2002)).

[¶ 9] To resolve this issue, it is necessary to review the record in some detail and place the events in context. Approximately six months after he was arrested, Mr. Leyva and the State reached a plea agreement. At a change of plea hearing held on March 21, 2006, the district court was advised that Mr. Leyva had agreed to plead guilty to the charge of third offense possession of methamphetamine, and in return, the State had agreed to dismiss the burglary charge. The State had also agreed to recommend a three to five year sentence, and not to oppose probation if that was recommended in the presentence investigation report. After questioning Mr. Leyva, the district court found that an adequate factual basis for the plea had been established, and that the plea was being entered freely and voluntarily after consultation with competent counsel. The district court took the plea under advisement, and said it would sentence Mr. Leyva after receiving the presentence investigation report.

[¶ 10] Two months later, the presentence investigation report was complete, and a sentencing hearing was held. The district court noted that the State had agreed not to oppose probation if the presentence investigation report recommended it. However, the report recommended referral to boot camp. It recommended probation only if the district court rejected the boot camp recommendation. The district court told Mr. Leyva that it would accept the boot camp recommendation:

> The Court fully intends to sentence Mr. Leyva to not less than 3 nor more than 5 years in prison with a recommendation to boot camp. I want to make sure that doesn't surprise Mr. Leyva. I want to make sure that ... doesn't give him the opportunity today to withdraw his plea of guilty and request a jury trial.

The district court then questioned Mr. Leyva, who initially said that he was not surprised by the sentence, that he believed the State was still honoring the terms of the plea agreement, and that he did not want to withdraw his guilty plea. The district court then pronounced a sentence of three to five years, with a recommended referral to boot camp.

[¶ 11] Even after pronouncing sentence, however, the district court still had doubts about Mr. Leyva's concession that his sentence conformed to the plea agreement. The district court made one more attempt at clarification:

> THE COURT: Let's take this bull by the horns, Mr. Leyva, and I am going to give you an opportunity right now, one time, to withdraw your plea of guilty and we will have a jury trial and we will do this sentencing all over again if you are convicted at your jury trial.
>
> Take a moment, discuss that with [defense counsel].

[Defense counsel]?

[DEFENSE COUNSEL]: Thank you for the additional time, Your Honor. Mr. Leyva informs me that there's been a misunderstanding . . . .

Is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: And that he does not wish to proceed further pursuant to the plea agreement; is that correct?

THE DEFENDANT: Yes.

THE COURT: Which means you will be going to trial probably on two counts; is that correct?

THE DEFENDANT: Yes.

THE COURT: So the deal is off. Mr. Leyva wants his jury trial to two potential charges. The first is felony—third offense possession of meth and the second is burglary.

THE DEFENDANT: Yes, sir.

[¶ 12] Mr. Leyva contends on appeal that it was improper for the district court to withdraw its acceptance of the guilty plea after it had accepted the plea and pronounced sentence. He relies on two cases, *United States v. Ritsema*, 89 F.3d 392 (7th Cir.1996), and *State ex rel. Brewer v. Starcher*, 195 W.Va. 185, 465 S.E.2d 185 (1995), for the general proposition that a trial court is bound by an approved plea agreement. Specifically, those cases hold that after a guilty plea is accepted and the sentence pronounced, the trial court may not withdraw its acceptance, *Ritsema*, 89 F.3d at 399, or increase the sentence. *Starcher*, 195 W.Va. at 193, 465 S.E.2d at 193.

[¶ 13] In both of those cases, however, the trial court was acting unilaterally, and over the objections of the defendants. In this case, the district court asked Mr. Leyva if he wished to withdraw his plea, Mr. Leyva said yes, and the district court allowed him to withdraw the plea. Not surprisingly, Mr. Leyva cites no precedent for reversing a trial court's decision allowing a defendant to withdraw a guilty plea when that was exactly what the defendant asked the trial court to do.

[¶ 14] The district court's actions were consistent with our rules of criminal proce-

dure. Under W.R.Cr.P. 11(d), "[t]he court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary . . . ." Even though Mr. Leyva initially indicated that his plea was voluntary, the district court remained doubtful. The record does not indicate the basis for this doubt, but the district court must have been responding to nonverbal cues not reflected in the written record. We have previously observed that it is difficult to discern the atmosphere in a courtroom "from the sterile, black and white transcript." *Belden v. State*, 2003 WY 89, ¶ 24, 73 P.3d 1041, 1081 (Wyo.2003). In making certain that Mr. Leyva was voluntarily maintaining his guilty plea, the district court was diligently complying with the mandate of W.R.Cr.P. 11(d).

[¶ 15] The district court did not lose the authority to reconsider the guilty plea after it pronounced sentence, as Mr. Leyva suggests. W.R.Cr.P. 32(d) provides that:

If a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed, the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason. At any later time, a plea may be set aside only to correct manifest injustice.

It is not entirely clear that Mr. Leyva's was a case of manifest injustice. It is clear that the district court had the authority to reach that conclusion, and to allow Mr. Leyva to withdraw his guilty plea.

[¶ 16] Because we conclude that the district court's decision did not violate any clear and unequivocal rule of law, it is not necessary to consider whether Mr. Leyva has established material prejudice. We note, however, that after the district court allowed him to withdraw his guilty plea, Mr. Leyva was given another chance to change his plea. A hearing was scheduled, but Mr. Leyva declined to change his plea, and reaffirmed his desire to go to trial:

THE COURT: This matter was—Mr. Leyva changed his plea on one occasion, and the matter was set for sentencing on June 26. The Court allowed Mr. Leyva to

withdraw his plea, the matter was set for Jury trial on July 25. The Court was informed that Mr. Leyva was again to change his plea, and it was set again for [hearing today].

Mr. Leyva, I am now informed that you again changed your mind, you don't want to change your plea and you want a jury trial. Is that correct, Mr. Leyva?

THE DEFENDANT: Yes, sir.

THE COURT: This case will go to trial. It will go to trial on July 25. No other postponements, continuances, excuses, and no other games will be played, Mr. Leyva. Is that clear?

THE DEFENDANT: Yes, sir.

THE COURT: Do you and I understand one another?

THE DEFENDANT: Yes, sir.

THE COURT: You want a jury trial, I will give you a jury trial. Is that clear?

THE DEFENDANT: Yes, sir.

We also note that, after Mr. Leyva was convicted on both counts, the district court sentenced him to the original term of three to five years on each count, and ordered that the sentences run concurrently. The district court also recommended referral to boot camp. The district court explained the sentence as follows:

Mr. Leyva, this Court will not punish you for exercising your constitutional right for a trial and will therefore give the same sentence that you would have received under the terms of the plea agreement.

We find neither error nor prejudice in the district court's decision to allow Mr. Leyva to withdraw his guilty plea.

2. **Did the district court err in allowing evidence of uncharged misconduct to be admitted at trial?**

[¶ 17] A trial court's decision on the admissibility of evidence is entitled to considerable deference, and will not be reversed on appeal unless the appellant demonstrates a clear abuse of discretion. "[A]s long as there exists a legitimate basis for the trial court's ruling, that ruling will not be disturbed on appeal." *Sanchez v. State*, 2006 WY 116, ¶ 20, 142 P.3d 1134, 1140 (Wyo. 2006).

[¶ 18] When Mr. Leyva was arrested, he was in possession of a brass pipe containing marijuana residue. This evidence, he says, was introduced by the State for the sole purpose of proving that he had the character to possess drugs, and to show that he acted in conformity with that character. He contends that this evidence was inadmissible under W.R.E. 404(b).

[¶ 19] A core principle of W.R.E. 404(b) is that the defendant in a criminal case "should not be convicted because he is an unsavory person, nor because of past misdeeds, but only because of his guilt of the particular crime charged." 1 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 4:21, at 691–92 (3d ed.2007). The Wyoming Rules of Evidence reflect this principle, and restrict the admissibility of evidence about other misdeeds:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

W.R.E. 404(b).

[¶ 20] We agree with Mr. Leyva that evidence that he was in possession of a brass pipe containing marijuana residue is evidence of "other crimes, wrongs, or acts" under W.R.E. 404(b). Those terms are not defined in the rules, but we have previously said that "wrongs" include "any sort of conduct that is likely to reflect adversely on the person in the eyes of the jury," and "other acts" include "any conduct, good or bad, that tends to show the character of the person involved." *Sanchez*, 2006 WY 116, ¶ 21, 142 P.3d at 1140 (quoting from 22 Charles A. Wright & Kenneth W. Graham, *Federal Practice and Procedure: Evidence* § 5239, at 456 (1978)). When the crime charged is illegal possession of methamphetamine, evidence that the defendant was also in possession of marijuana is exactly the kind of uncharged misconduct evidence to which W.R.E. 404(b)

is meant to apply. Such evidence tends to show the character of the accused, increases the likelihood that the jury will render a guilty verdict on an improper basis, and should not be admitted unless the requirements of W.R.E. 404(b) are met.

[¶ 21] The State maintains that the evidence was not subject to W.R.E. 404(b) because it was "part and parcel" of the events surrounding and following Mr. Leyva's arrest. Mr. Leyva told the police officers that he had borrowed the television set and the pants from Mr. King. Explaining the items in the pockets of the pants, Mr. Leyva gave inconsistent accounts of when he had borrowed the pants, saying he had put the knife in the pocket the evening before, but that the pipe must have been in the pocket when he borrowed the pants that morning. These inconsistent statements cast doubt on Mr. Leyva's veracity, in the State's view, and made it more likely that he had stolen the television, as the State asserted, and less likely that he had borrowed it from Mr. King, as Mr. Leyva had told the police. The State said it would be difficult or impossible to relate the inconsistent statements to the jury without reference to the knife and the pipe, because the inconsistent statements were made about those very items. Evidence of the knife and the pipe was admissible, the State asserted, because it was necessary to "give the jury the whole story and enhance the natural development of the facts of the case."

[¶ 22] While the State uses the term "part and parcel" of the crimes charged, this Court has more often termed evidence of this type "intrinsic" evidence. We have said that evidence of other crimes, wrongs, or acts is intrinsic when it "and the evidence of the crime charged are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged." *Howard v. State*, 2002 WY 40, ¶ 12, 42 P.3d 483, 487 (Wyo.2002) (quotation marks omitted). *See also Barker v. State*, 2006 WY 104, ¶ 36, 141 P.3d 106, 118 (Wyo.2006) (contrasting intrinsic and extrinsic evidence).

[¶ 23] Intrinsic evidence is still subject to W.R.E. 404(b). In *Howard* and *Bark-*

er, we did not hold that intrinsic evidence was beyond the reach of W.R.E. 404(b). Rather, we upheld the admission of intrinsic evidence because the trial court had properly found it admissible under W.R.E. 404(b). *See also Ross v. State*, 930 P.2d 965, 969–70 (Wyo.1996) (Evidence "which does not constitute a portion of [the] crimes charged but has a natural, necessary, or logical connection to the crime" must be analyzed for admissibility under W.R.E. 404(b).).

[¶ 24] Evidence of "other crimes, wrongs, or acts," intrinsic or not, may improperly invite the jury to convict a defendant because of other misdeeds, not because of his guilt of the crime charged. Such evidence should be admitted only when it has some proper purpose, is relevant, and is more probative than prejudicial. As detailed in the discussion below, this is the result W.R.E. 404(b) is designed to accomplish. For that reason, placing intrinsic evidence beyond the reach of W.R.E. 404(b) would be "unwise and wrong." 1 Mueller & Kirkpatrick, *supra*, § 4:33, at 818. *See also* 22 Wright & Graham, *supra*, § 5239.

[¶ 25] Evidence that Mr. Leyva was in possession of a pipe with marijuana residue was analyzed by the district court at a hearing held during the trial. The district court ruled as follows:

> I'm going to allow the evidence of the marijuana pipe in Mr. Leyva's pocket. I'm not sure that this evidence is uncharged misconduct evidence as described in 404(b) and the Gleason case. But if it is uncharged misconduct evidence—and again, I think it is not. I think it is part and parcel of the crimes charged, in fact. I believe it is properly admissible as relevant. Clearly it's prejudicial, but all evidence introduced by the State against Mr. Leyva is prejudicial. It is more probative than it is prejudicial for the purpose of explaining or countering, if you will, statements made by Mr. Leyva to the police. And on that basis, I will allow testimony as to the pot pipe found in Mr. Leyva's pocket.

If the district court incorrectly stated that the evidence was not subject to W.R.E. 404(b), that misstatement was rendered im-

material when the court immediately proceeded to analyze the evidence under W.R.E. 404(b).

[¶ 26] We have said that a district court must consider four criteria in applying W.R.E. 404(b) to uncharged misconduct evidence: (1) Is the evidence offered for a proper purpose? (2) Is the evidence relevant? (3) Is the probative value of the evidence substantially outweighed by its potential for unfair prejudice? (4) Upon request, should the jury be given a limiting instruction? *Blakeman v. State*, 2004 WY 139, ¶ 31, 100 P.3d 1229, 1237 (Wyo.2004) (citing *Howard*, 2002 WY 40, ¶ 17, 42 P.3d at 488, and *Huddleston v. United States*, 485 U.S. 681, 691, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771 (1988)). No request for a limiting instruction was made, so we will review the district court's application of the first three criteria. If the district court applied these criteria and had a legitimate basis for its ruling, we will uphold the decision. *Gleason v. State*, 2002 WY 161, ¶ 20, 57 P.3d 332, 341 (Wyo.2002).

[¶ 27] Evidence of other crimes, wrongs, or acts is admissible if it serves a proper purpose, and is excluded only if its sole purpose is to prove that a defendant has a disposition to commit crimes. *Bromley v. State*, 2007 WY 20, ¶ 9, 150 P.3d 1202, 1207 (Wyo.2007); *Blakeman*, 2004 WY 139, ¶ 32, 100 P.3d at 1237. W.R.E. 404(b) lists several purposes, other than proof of character, for which evidence may be admitted: proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The list of allowable purposes identified in W.R.E. 404(b) is exemplary, not exhaustive. *Blakeman*, 2004 WY 139, ¶ 32, 100 P.3d at 1237; 1 Mueller & Kirkpatrick, *supra*, § 4:33, at 809.

[¶ 28] We have previously recognized that evidence of uncharged misconduct is admissible if it "forms part of the history of the event or serves to enhance the natural development of the facts." *Bromley*, 2007 WY 20, ¶ 9, 150 P.3d at 1207; *Blakeman*, 2004 WY 139, ¶ 32, 100 P.3d at 1237; *Crozier v. State*, 723 P.2d 42, 49 (Wyo.1986). We have referred to this as the "course of conduct" purpose. *Crozier*, 723 P.2d at 49. Other jurisdictions applying this concept have called it the "same transaction" purpose or the "complete story" purpose. *Id.*

[¶ 29] The State asserted that the evidence at issue was intrinsic because it was needed to "give the jury the whole story and enhance the natural development of the facts of the case." While that does not mean the evidence was beyond the reach of W.R.E. 404(b), it does show that the State had a proper "course of conduct" or "complete story" purpose for admitting the evidence. In its ruling, the district court did not explicitly use the terms "course of conduct," but it plainly agreed with the State that the evidence was offered for that proper purpose. The record provides a legitimate basis for the district court's conclusion. *Bromley*, 2007 WY 20, ¶ 9, 150 P.3d at 1207; *Blakeman*, 2004 WY 139, ¶ 32, 100 P.3d at 1237; *Crozier*, 723 P.2d at 49.

[¶ 30] The district court expressly found that the evidence was relevant, and that the evidence was more probative than prejudicial. The State had emphasized the relevance and probative value of the evidence because it was part of Mr. Leyva's inconsistent stories about borrowing the pants, making it more likely that the television was stolen and less likely that it was borrowed. The district court agreed. As stated above, a trial court's rulings on the admissibility of evidence are entitled to considerable deference. *Sanchez*, 2006 WY 116, ¶ 20, 142 P.3d at 1140. The record reflects that the district court considered the required criteria, had legitimate bases for its conclusions, and did not abuse its discretion in admitting the evidence at trial.

[¶ 31] However, Mr. Leyva further challenges the district court's ruling on procedural grounds. He correctly states that this Court has adopted a procedure to be followed when uncharged misconduct evidence is to be introduced at trial:

> [W]hen a defendant files a pretrial demand for notice of intent to introduce evidence under W.R.E. 404(b), the same shall be treated as the making of a timely objection to the introduction of such evidence. The State must then respond with sufficient information to meet the balance of our

four-part test for determining the admissibility of other bad acts evidence.

*Barker*, 2006 WY 104, ¶ 35, 141 P.3d at 117 (internal citations and quotation marks omitted). Our decision in *Howard*, 2002 WY 40, ¶ 23, 42 P.3d at 491, indicated the reasons for this procedure:

> Not only will such a rule enhance the defendant's prospects of receiving due process and a fair trial, it will also enhance the district court's ability to reflect and rule upon a significant evidentiary issue. Rulings on uncharged misconduct evidence are too important to be made in the heat and pressure of a trial, with the jury twiddling its thumbs in the next room.

We have also imposed requirements on the trial court:

> In future cases involving the admissibility of evidence under W.R.E. 404(b), the record shall reflect the trial court's identification of the purpose or purposes for admission of the evidence, the findings and conclusions establishing relevance and probative value, and the factors considered in balancing probative value against the potential for unfair prejudice. The "shotgun approach" of listing every conceivable purpose for admissibility, followed by a bald statement that probative value outweighs prejudicial effect will no longer be sufficient. While the trial court need not make an express finding on every factor … the record must contain sufficient findings to support the trial court's conclusions.

*Gleason*, 2002 WY 161, ¶ 30, 57 P.3d at 343.

[¶ 32] Mr. Leyva filed a pretrial demand for notice of intent to introduce evidence under W.R.E. 404(b), preserving the timely objection on which this appeal is based. The State responded that it did not intend to introduce any evidence pursuant to W.R.E. 404(b), and did not mention the pipe with marijuana residue. At the hearing on this issue, the State explained that it had not mentioned the marijuana pipe because it did not believe the evidence was subject to W.R.E. 404(b). The State maintained this position on appeal, and although we disagree, the position was not untenable or unreasonable. Indeed, the district court agreed with it. When there is any question that evidence

is subject to W.R.E. 404(b), the State should list that evidence in response to a defendant's pretrial demand. However, Mr. Leyva does not assert, nor does the record suggest, that the prosecution failed to list the evidence in bad faith, or to surprise the defendant unfairly at trial.

[¶ 33] In fact, Mr. Leyva was not unfairly surprised at trial. The State listed this evidence in its pretrial memorandum, filed more than six months before trial. Mr. Leyva made no claim that the evidence was inadmissible under W.R.E. 404(b) until the trial was in progress. At that point, the district court dismissed the jury and conducted a hearing on the issue. We have expressed a "firm preference" for a pretrial hearing on uncharged misconduct evidence. *Howard*, 2002 WY 40, ¶ 23, 42 P.3d at 491. However, when the issue is not raised until trial, and a prompt and thorough hearing is held at that time, the district court's failure to hold a pretrial hearing cannot be considered an abuse of discretion.

[¶ 34] Further, when the district court ruled that the evidence was admissible, it did not take "[t]he 'shotgun approach' of listing every conceivable purpose for admissibility," the procedure we condemned in *Gleason*, 2002 WY 161, ¶ 30, 57 P.3d at 343. One key purpose of the mandatory procedures under W.R.E. 404(b) is to ensure that the record contains sufficient information to support the trial court's conclusions, and to allow our review of those conclusions on appeal. *Gleason*, 2002 WY 161, ¶ 30, 57 P.3d at 343. Our prior discussion demonstrates that the record in Mr. Leyva's case contains sufficient information to explain and support the trial court's conclusions, and to allow meaningful review. Accordingly, we find no abuse of discretion in admission of the challenged evidence.

### CONCLUSION

[¶ 35] The district court did not err in granting Mr. Leyva's request to withdraw his guilty plea. The district court did not abuse its discretion in admitting uncharged misconduct evidence. Rather, the district court properly analyzed the evidence under W.R.E.

404(b), had a legitimate basis for admitting the evidence, and under the circumstances, fulfilled the mandatory requirements for admitting evidence under W.R.E. 404(b). We affirm the district court's decisions in all respects.