2008 WY 13

**Roy Glenn REAY, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. S-07-0053.

Supreme Court of Wyoming.

Feb. 8, 2008.

---

Representing Appellant: Diane M. Lozano, State Public Defender; Ryan R. Roden, Deputy Public Defender; Tina N. Kerin, Appellate Counsel; David E. Westling, Senior Assistant Public Defender.

Representing Appellee: Bruce A. Salzburg, Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; James Michael Causey, Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

[¶ 1]   Roy Glenn Reay was convicted of burglary, aggravated kidnapping, and battery against a household member. He claims that the district court, at trial, allowed inadmissible testimony on three separate occasions. We will affirm.

### ISSUE

[¶ 2]   Mr. Reay presents his issue in the form of an assertion:

> The district court violated W.R.E. 404(b) by allowing the State of Wyoming to introduce evidence of prior crimes, wrongs, or acts of Mr. Reay to prove character, and that Mr. Reay acted in conformity with that character.

### FACTS

[¶ 3]   Following her divorce, Kelly Meyer moved to Casper, Wyoming, where she met Mr. Reay. They developed a romantic relationship, and eventually lived together. In the autumn of 2003, however, Ms. Meyer broke off their relationship. She moved out of the apartment they had shared. After living in her car for a time, she moved into a trailer home with two acquaintances, hoping that Mr. Reay would not find her there.

[¶ 4]   Shortly after Ms. Meyer moved into the trailer, however, Mr. Reay broke in, awakened her in her bedroom, pushed her to the floor, knelt on top of her, and pinned her to the floor. He began strangling her and beating her with his fist. He twisted her arm behind her back until she thought it was going to break. He yelled at her and called her names too graphic to repeat here. He told her she would not live to see her next birthday because he was going to kill her, take her up to Casper Mountain, and burn her body in a pile of tires. He continued beating her and strangling her, then bit her on the nose. She lost consciousness at least three times, but during periods of consciousness, she begged and pleaded for him to stop.

[¶ 5]   Eventually, Mr. Reay told Ms. Meyer to get up and get dressed so he could take her up to the mountain. As the two exited the trailer, Ms. Meyer stepped out of the door and attempted to lock Mr. Reay inside. She broke away and ran, screaming for help, but Mr. Reay caught up with her, grabbed her, and started dragging her along the street toward his car. Ms. Meyer continued to scream for help, and two neighbors, Ronnell Haddon and Jeffrey Simmons, responded. They observed Mr. Reay holding Ms. Meyer in a "headlock" and trying to "stick her in the car." Ms. Meyer screamed that he was going to kill her, and Mr. Haddon confronted Mr. Reay, demanding that he let Ms. Meyer go. Mr. Reay responded that Ms. Meyer was his "old lady," but she was cheating on him. According to Mr. Haddon, he "knew that this girl was in some serious

trouble," so he raised his fists and again demanded that Mr. Reay release her. Finally, Mr. Reay let her go, and the two neighbors quickly pulled her away from the scene. As Mr. Reay drove away, Mr. Simmons wrote down the car's license plate number.

[¶ 6] The neighbors took Ms. Meyer to Mr. Haddon's trailer, where they called an ambulance and the police. The two observed that she had blood on her hands and face, red marks on her face, swollen eyes, and cuts and bruises. She also had scratches on her back, and was bleeding "pretty bad" from a wound on her finger. The neighbors described Ms. Meyer as "scared to death," "fearful for her life," and "crying and just really extremely distraught." Ms. Meyer was taken to the hospital for emergency medical treatment.

[¶ 7] Because Mr. Simmons had written down the license plate number, the police soon located and stopped Mr. Reay's car. The driver was not Mr. Reay, however, but a friend of his. The friend reported that Mr. Reay loaned him the car because Mr. Reay was going to Denver. Mr. Reay's whereabouts in the interim are not documented in the record, but he was not arrested until more than two years after the incident. He was charged with burglary, aggravated kidnapping, and battery against a household member. After trial, the jury convicted Mr. Reay of all three charges. The district court sentenced him to prison for forty years to life on the charge of aggravated kidnapping, four to six years on the charge of burglary, and one year on the charge of battery. Mr. Reay now appeals his convictions and sentence.

## STANDARD OF REVIEW

[¶ 8] Mr. Reay's counsel objected to the challenged testimony at trial, and so we review the district court's rulings for abuse of discretion.

A trial court's decision on the admissibility of evidence is entitled to considerable deference, and will not be reversed on appeal unless the appellant demonstrates a clear abuse of discretion. "[A]s long as there exists a legitimate basis for the trial court's ruling, that ruling will not be disturbed on appeal." *Sanchez v. State*, 2006

WY 116, ¶ 20, 142 P.3d 1134, 1140 (Wyo. 2006).

*Leyva v. State*, 2007 WY 136, ¶ 17, 165 P.3d 446, 452 (Wyo.2007). Even if the district court admitted evidence in error, we must consider whether the error was prejudicial or harmless. *Solis v. State*, 981 P.2d 34, 36 (Wyo.1999). Error is prejudicial if there is a reasonable possibility that the verdict might have been more favorable to the defendant if the error had not been made. *Id.* Prejudicial error requires reversal, while harmless error does not. W.R.A.P. 9.04.

## DISCUSSION

[¶ 9] W.R.E. 404(b) provides as follows:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Mr. Reay claims that, three times during his trial, the district court allowed testimony about his past assaults or threats against Ms. Meyer. This evidence, he asserts, had no evidentiary value in proving the crimes charged, but was offered only to prove that he was prone to committing domestic violence, and acted in conformity with that character. To evaluate his claims, we consider each of the three pieces of challenged testimony in context.

[¶ 10] First, on direct examination, the prosecution asked Ms. Meyer to describe what happened on the morning she was attacked.

Q. Okay. Can you describe to the ladies and gentlemen of the jury how it was that you woke up that morning[?]

A. I woke up, and I was being—I was held down. I couldn't move. I didn't know what was going on, why I couldn't move. And I was—the next thing that I realized was that [Mr. Reay] was there and that he was choking me. He was yelling at me; telling me that I was stupid, thinking that he wasn't going to find me, because he

would always find me; saying that I thought I was so smart; choking me and hitting me; telling me he was going to kill me, going to take me up to the mountain and burn my body in tires. And he was hitting me fast and hard. And he—he flipped me over on my back, twisted my arm behind my back. Was saying that if I—if I thought that he abused me before, he didn't abuse me before; this was abuse. And then he was hitting and choking me again.

Defense counsel objected that the testimony "specifically went into instances of former conduct" in violation of W.R.E. 404(b), and asked for a mistrial. The district court responded that the testimony was "a statement made by the defendant in the course of this incident, which is—I mean, she is allowed to say what he said. And if he referred to an earlier abuse, I don't know how we keep that out." The district court ruled that the testimony was not prohibited by W.R.E. 404(b) because it "is part of what happened in this incident."

■ [¶ 11] The district court's comments suggest that it considered Mr. Reay's statement to Ms. Meyer to be intrinsic evidence. "[E]vidence of other crimes, wrongs, or acts is intrinsic when it 'and the evidence of the crime charged are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged.'" *Leyva*, ¶ 22, 165 P.3d at 453, quoting *Howard v. State*, 2002 WY 40, ¶ 12, 42 P.3d 483, 487 (Wyo.2002). We have expressly held that intrinsic evidence is still subject to analysis under W.R.E. 404(b). *Leyva*, ¶ 23, 165 P.3d at 453. Accordingly, the fact that this evidence involved Mr. Reay's own statement, made to the victim while committing the actions for which he was charged, does not exempt it from W.R.E. 404(b).

■ [¶ 12] We nevertheless affirm the district court's ruling, because we conclude that Ms. Meyer's testimony did not amount to evidence "of other crimes, wrongs, or acts." According to Ms. Meyer, Mr. Reay's statement was that "if I thought that he abused me before, he didn't abuse me before; this was abuse." The phrase "this was

abuse" was not about other crimes, wrongs, or acts. It was about the very incident for which Mr. Reay was being tried. The phrase "if I thought that he abused me before, he didn't abuse me before" was conditional, not a positive assertion that he had abused her before. To the extent it implied past abuse, it gave no details about any particular instance of abuse, and no mention of when, where, or how it may have occurred. Ms. Meyer's testimony was simply too ambiguous to constitute evidence of uncharged misconduct, and under these circumstances, we find that the district court did not abuse its discretion.

■ [¶ 13] Second, on direct examination by the prosecution, Ms. Meyer was asked about her efforts, prior to the attack, to get her belongings from Mr. Reay's apartment.

A. . . . There were two times when I had tried to go and get my things.

. . .

Q. Okay. The one you just testified to, when did that happen?

A. It was fairly recently after I moved out.

Q. Okay. And then there was a second occasion after that?

. . .

A. Yes.

Q. Did anybody go with you then?

A. No; but the police were called.

Q. Okay. And did you come in contact with [Mr. Reay] then?

A. No.

Q. Okay. So you only had actual face-to-face contact with him that [first] time when you went to retrieve your furniture?

A. It wasn't—it wasn't face-to-face. I wasn't—I wasn't ever able to succeed with getting my things.

Q. Okay. So you never came in face-to-face contact with him, then, again?

A. No.

Defense counsel objected that Ms. Meyer's statement about the police being called amounted to "telling this jury . . . there is bad conduct and acts in the past." He asserted that the evidence was inadmissible

under W.R.E. 404(b). The district court overruled the objection, chiefly on the basis that Ms. Meyer's statement was too vague to constitute evidence of uncharged misconduct.

[¶ 14] We agree with the district court. Indeed, this testimony is even more ambiguous than the previous example. Ms. Meyer did not indicate who called the police or why they were called. She did not say that the police were called because of something Mr. Reay did, much less that they were called because he threatened her or assaulted her. Her testimony that she had had no contact with Mr. Reay made it seem unlikely that the police were called because Mr. Reay assaulted her. This testimony did not amount to evidence of prior misconduct, and so was not inadmissible under W.R.E. 404(b).

■ [¶ 15] Third, we consider the testimony of Mr. Haddon, who related what Ms. Meyer said after being rescued.

Q. Okay. Now, did she identify who the gentleman was that she was in this altercation with?

A. She did.

Q. And who did she identify that person as being?

A. She said his name was Roy Reay.

Q. And were you relaying this information to the individuals you had on 9–1–1?

A. Yes, I was.

Q. Okay. Did she indicate to you anything else at that time?

A. She had said that—that she had woken up with him on top of her.

Q. Okay.

A. That's how she was awakened.

Q. Okay. Did she say anything else?

A. That he had stated to her that he was going to take her up to Casper Mountain and burn her in a tire fire.

Q. Okay. Is that pretty much all that you got out of her?

A. That, and she—and she said that there was previous instances of—of violence against her by him.

Defense counsel interrupted Mr. Haddon's testimony with an objection that it "brought up the fact of other violence, acts of violence against ... Ms. Meyer by Roy Reay. That is clearly 404(b)." Defense counsel moved for a mistrial, but the district court denied the motion, stating that the testimony did not indicate any specifics or reference any particular event. The district court did, however, offer to instruct the jury to disregard the statement, and when defense counsel agreed, this instruction was given:

Ladies and gentlemen, immediately prior to our recess, Mr. Haddon made a statement that the alleged victim in this matter had referred to prior inciden[ts] between [Ms. Meyer] and Mr. Reay. You are to disregard that statement, ignore it completely. It is to have no bearing and not to be considered by you when you retire to make your decision as to whether Mr. Reay is or is not guilty of the crimes of which [he has] been charged.

[¶ 16] Implicit in the district court's offer of a limiting instruction is the conclusion that the evidence was inadmissible under W.R.E. 404(b). *See Thomas v. State,* 2006 WY 34, ¶ 36, 131 P.3d 348, 358 (Wyo.2006). We agree. Unlike Ms. Meyer's vague reference to the police being called, or her testimony about Mr. Reay's conditional statement, "if I thought that he abused me before, he didn't abuse me before," Mr. Haddon's comment was a direct assertion that there had been previous instances of violence against Ms. Meyer by Mr. Reay. This was evidence of uncharged misconduct, and should not have been admitted into evidence without being analyzed as W.R.E. 404(b) requires.

■ [¶ 17] However, as the district court stated when it was considering post-trial motions, the "evidence was so strong against Mr. Reay that this statement didn't add very much to that. With or without the statement, I think the conviction would have been obtained." Our review of the record confirms that there is no reasonable possibility that the verdict might have been more favorable to Mr. Reay without Mr. Haddon's comment. In particular, Ms. Meyer told the jury that Mr. Reay had previously been convicted of a domestic assault against her. The district court had ruled that the prosecution could not introduce evidence of this conviction in its direct examination of Ms. Meyer,

but might be able to use the evidence in redirect if the defense challenged Ms. Meyer's testimony that she had tried to avoid contact with Mr. Reay. Apparently for strategic reasons, it was the defense who asked Ms. Meyer about Mr. Reay's prior conviction, and the admission of this evidence is not challenged in this appeal. Given Ms. Meyer's specific testimony about Mr. Reay's conviction, Mr. Haddon's rather off-handed comment about previous instances of violence cannot be considered prejudicial. Moreover, the district court instructed the jury to disregard and ignore the statement, and we must presume that the jury followed that curative instruction. *Thomas,* ¶ 37, 131 P.3d at 358. Given the lack of prejudice and the district court's limiting instruction, we find no abuse of discretion in the district court's ruling.

[¶ 18] Finally, we consider Mr. Reay's assertion that the district court improperly admitted evidence of prior misconduct pursuant to W.R.E. 404(b) without following the pretrial procedures mandated by *Howard v. State,* 2002 WY 40, ¶ 23, 42 P.3d 483, 491 (Wyo.2002), and *Gleason v. State,* 2002 WY 161, ¶¶ 27–30, 57 P.3d 332, 342–43 (Wyo.2002). We emphasize once again that these pretrial procedures are important because they "enhance the defendant's prospects of receiving due process and a fair trial," as well as "the district court's ability to reflect and rule upon a significant evidentiary issue." *Howard,* ¶ 23, 42 P.3d at 491.

[¶ 19] However, Ms. Meyer's testimony did not amount to evidence of uncharged misconduct, so the pretrial procedures required for the admission of evidence under W.R.E. 404(b) were inapplicable. Mr. Haddon's testimony was evidence of uncharged misconduct. As set forth in *Howard* and *Gleason,* upon request by the defense, the prosecution must provide notice if it intends to introduce evidence of uncharged misconduct, and the district court must hold a pretrial hearing to consider the admissibility of the intended evidence. But the prosecution in Mr. Reay's case did not intend to introduce Mr. Haddon's testimony as evidence of uncharged misconduct. The prosecution's question—"Is that pretty much all that you got out of her?"—was not an intentional attempt to solicit improper evidence. The district court concluded that the prosecution had not elicited Mr. Haddon's comment, and that the comment "was somewhat nonresponsive." The prosecution also assured the district court that Mr. Haddon had been admonished not to testify about Mr. Reay's previous assaults against Ms. Meyer. Because the prosecution did not intend to introduce such evidence, it was not required to provide the defense with notice that it would attempt to introduce the evidence. The mandatory *Howard* and *Gleason* procedures did not apply under these circumstances. This is not a case where the district court improperly allowed the prosecution to introduce evidence of uncharged misconduct without following the required procedures. It is a case where a witness inadvertently mentioned such evidence, and the district court promptly instructed the jury to disregard it. Accordingly, we find no abuse of discretion.

[¶ 20] Affirmed.