# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 93

APRIL TERM, A.D. 2020

*July 15, 2020*

MICHAEL DELWIN VINSON,

**Appellant**
**(Defendant),**

**v.**

S-19-0273

THE STATE OF WYOMING,

**Appellee**
**(Plaintiff).**

*Appeal from the District Court of Big Horn County*
*The Honorable Bobbi Dean Overfield, Judge*

*Representing Appellant:*
Office of the State Public Defender: Diane M. Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Desiree Wilson, Senior Assistant Appellate Counsel.

*Representing Appellee:*
Bridget L. Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General; Catherine M. Mercer, Assistant Attorney General; Kelly D. Mullen, Assistant Attorney General.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice.**

[¶1]    A jury convicted Michael D. Vinson of aggravated assault and battery.  Mr. Vinson argues his conviction should be reversed because the district court improperly admitted W.R.E. 404(b) evidence.  We affirm.

## *ISSUE*

[¶2]    Was Mr. Vinson prejudiced by the admission of W.R.E. 404(b) evidence without the required *Gleason* analysis?

## *FACTS*

[¶3]    In March 2018, the State charged Mr. Vinson with one count of aggravated assault and battery under Wyo. Stat. Ann. § 6-2-502(a)(i).  The felony information alleged that on February 1, 2018, Mr. Vinson "caused or attempted to cause serious bodily injury to another, [] intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]"  More specifically, it alleged Mr. Vinson kicked SK in the head with his foot, causing serious bodily injury.

[¶4]    In the supporting affidavit, Greybull Police Department Chief Bill Brenner summarized his investigation, which began when he received a phone call from SK informing him that her fiancé, Mr. Vinson, assaulted her in Greybull on February 1, 2018.  According to SK, she had been visiting Mr. Vinson at the residence his employer rented for him.  They got into an argument after returning home from a bar.  SK slapped Mr. Vinson in the face and, in response, he kicked her in the face, knocking her unconscious.  SK woke up later to find Mr. Vinson washing the blood out of her hair and having sexual intercourse with her without her consent.  She passed out, woke up sometime later, and again found Mr. Vinson having sexual intercourse with her without her consent.  SK advised Mr. Vinson she needed medical attention, but he told her to rest and expressed concern about going to jail.  After Mr. Vinson left for work in Billings, Montana later that morning, SK drove herself to the South Big Horn County Hospital, where she told medical staff she got into a fight with a friend.  She did not report the sexual assault because she thought it could not be a crime given her relationship with Mr. Vinson.  She had to be flown to the hospital in Billings for further treatment.

[¶5]    Chief Brenner received written statements from SK and her sister, who SK contacted before going to the hospital.  Hospital records reflected SK had several fractures to her skull, a busted ear drum, a fractured nose, and bruises on her chest, thighs, and arms.  Chief Brenner spoke with Darren Berlinger, who gave Mr. Vinson and SK a ride home from a local bar on the night of the assault.  Mr. Berlinger remembered Mr. Vinson and SK getting into a verbal altercation.  Mr. Vinson later denied having an altercation with SK when Chief Brenner telephoned him on March 23.

1

[¶6] In preparation for trial, Mr. Vinson filed a standard demand for disclosure of the State's intent to introduce W.R.E. 404(b) evidence. The State did not file a responsive pleading, thus suggesting it did not intend to introduce any 404(b) evidence. Concerned the State may present evidence that Mr. Vinson had sexual intercourse with SK twice without her consent on the evening of the altercation, Mr. Vinson filed a motion in limine to prevent the State from referencing the nonconsensual sexual encounters.[1] The motion did not mention Rule 404(b).

[¶7] Instead, Mr. Vinson's motion in limine argued all testimony and documentary evidence referencing a sexual assault must be excluded as irrelevant and highly prejudicial because Mr. Vinson had not been charged with sexual assault. The State agreed not to reference a "sexual assault," but maintained the sexual intercourse evidence was necessary to prove an element of aggravated assault and battery. According to the State, SK made statements to the effect that while Mr. Vinson was beating her, he was also engaging in sexual intercourse with her, and such evidence was relevant to show Mr. Vinson's extreme indifference to human life.

[¶8] The court denied Mr. Vinson's motion in limine on the grounds raised in his motion. In doing so, the court expressly noted it had not determined when the sexual intercourse occurred or its relationship to the alleged assault. But to the extent the sexual intercourse was part of the circumstances in the case, the court would allow it. The court noted it would "see how further evidence bears out for further objections[.]"

[¶9] In immediate response to this ruling, defense counsel expressed concern that the sexual intercourse evidence was uncharged misconduct evidence. The court pointed out the motion in limine had not mentioned Rule 404(b). Defense counsel agreed but countered that he had filed a pretrial demand for notice of the State's intent to introduce 404(b) evidence and received no response from the State. The court declined to alter its ruling.

[¶10] The case proceeded to a five-day trial. We summarize the alleged 404(b) evidence here, reserving further discussion for the prejudice analysis below.

[¶11] The prosecutor focused on SK's testimony and how other evidence corroborated it. In opening statements, the prosecutor mentioned that SK would recount that Mr. Vinson had sexual intercourse with her after the physical assault. On direct examination, SK's testimony reflected the first instance occurred well after the physical assault. SK admitted that she slapped Mr. Vinson once in the face during their argument. The next thing she remembered was waking up in a puddle of blood on the floor between the kitchen and living room. On regaining consciousness, she knocked on the locked master bedroom door and asked Mr. Vinson for help. He opened the door, led her to the master bathroom, put her in the shower, and cleaned the blood off her. He assured her she was fine and did not

---

[1] We generally refer to this as "the sexual intercourse evidence."

2

need medical attention. Mr. Vinson then helped her out of the shower, put a robe on her, led her to the bed, and had sex with her. She did not participate, just laid there, "couldn't hear anything," and "was in so much pain" from her injuries.

[¶12] The second instance occurred the following morning when Mr. Vinson was getting ready for work. SK testified they had not made up and she just wanted him to leave. Mr. Vinson came into the bedroom and started touching her. He licked his hand and forced it between her legs; he penetrated her and had sex with her. She did not participate, just laid there, and did not move her head.

[¶13] Two additional witnesses mentioned the sexual intercourse evidence. SK's sister testified that SK "mentioned that [Mr. Vinson] had sex with her two different times when she was in and out of consciousness." Chief Brenner testified that during his investigation SK "remember[ed] at least two occasions where [Mr. Vinson] had sexual intercourse with her." Chief Brenner "asked her if she consented to that and she said she did not, but she felt because . . . he was her fiancé [] she could not report that as rape." Chief Brenner "advised her that is not accurate, but she felt there would be no way to substantiate evidence for that claim."

[¶14] Before closing argument, the court instructed the jury on the elements of aggravated assault and battery. It further instructed the jury the State had to prove beyond a reasonable doubt Mr. Vinson had not acted in self-defense. Neither the prosecutor nor defense counsel mentioned sexual intercourse in closing argument.

[¶15] The jury convicted Mr. Vinson of aggravated assault and battery, finding he caused serious bodily injury to SK recklessly, under circumstances which showed an extreme indifference to the value of human life. The court sentenced him to six to eight years imprisonment.

## STANDARD OF REVIEW

[¶16] Mr. Vinson's pretrial demand for notice of the State's intent to introduce 404(b) evidence directs that we review the district court's admission of the State's evidence that Mr. Vinson had sexual intercourse with SK twice without her consent for an abuse of discretion. *Broberg v. State*, 2018 WY 113, ¶ 15, 428 P.3d 167, 171 (Wyo. 2018) ("We review challenges to the admission of evidence for an abuse of discretion when an objection has been lodged" and a pretrial demand is treated as a timely objection. (quoting *Cardenas v. State*, 2014 WY 92, ¶ 7, 330 P.3d 808, 810 (Wyo. 2014))). "If we determine the court abused its discretion in admitting 404(b) evidence, 'we must also determine whether the error was prejudicial.'" *Id.* (quoting *Mersereau v. State*, 2012 WY 125, ¶ 17, 286 P.3d 97, 106 (Wyo. 2012)).

3

## DISCUSSION

[¶17] A core principle of Wyoming Rule of Evidence 404(b) "is that the defendant in a criminal case 'should not be convicted because he is an unsavory person, nor because of past misdeeds, but only because of his guilt of the particular crime charged.'" *Leyva v. State*, 2007 WY 136, ¶ 19, 165 P.3d 446, 452 (Wyo. 2007) (quoting 1 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 4:21, at 691–92 (3d ed. 2007)). The rule states:

> (b) *Other crimes, wrongs, or acts*.—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

W.R.E. 404(b).[2]

[¶18] Mr. Vinson argues the district court abused its discretion by admitting the sexual intercourse evidence. He maintains the evidence is uncharged misconduct evidence subject to Rule 404(b), the court failed to conduct the required *Gleason* analysis before admitting the evidence, and even if the court had conducted the required analysis the evidence would not have been admissible. He further contends there is a reasonable possibility the verdict would have been different had the evidence been excluded.

[¶19] The State, in response, persists in arguing the sexual intercourse evidence is not subject to Rule 404(b) because it is relevant to prove Mr. Vinson's reckless conduct and to rebut his self-defense claim. The State further contends Rule 404(b) does not apply

---

[2] We refer to Rule 404(b) evidence using interchangeable phrases. *See, e.g.*, *Mayhew v. State*, 2019 WY 38, ¶¶ 23–26, 438 P.3d 617, 623–24 (Wyo. 2019) ("other acts evidence"); *Birch v. State*, 2018 WY 73, ¶ 19, 421 P.3d 528, 535 (Wyo. 2018) ("uncharged misconduct evidence"); *Swett v. State*, 2018 WY 144, ¶ 30, 431 P.3d 1135, 1144 (Wyo. 2018) ("other bad acts evidence"); *Gleason v. State*, 2002 WY 161, ¶ 27, 57 P.3d 332, 342 (Wyo. 2002) (citation omitted) ("prior bad acts evidence"); *Howard v. State*, 2002 WY 40, ¶ 15, 42 P.3d 483, 487 (Wyo. 2002) ("404(b) evidence"). In *Howard*, we noted that "[c]ommentators now tend to use the phrase 'uncharged misconduct' rather than 'prior bad acts,' in part because the act in question may not have occurred prior to the charged act." *Id.* ¶ 21 n.2, 42 P.3d at 490 n.2 (citing 1 Edward J. Imwinkelreid, *Uncharged Misconduct Evidence* § 2:12 (1999)). We use the phrase "uncharged misconduct evidence" here.

4

because the sexual intercourse evidence is intrinsic evidence—it places the crime in context, is "inextricably intertwined" with the charged offense, and is part of a "single criminal episode." Finally, the State suggests our precedent regarding whether intrinsic evidence is subject to Rule 404(b) is in conflict and we should hold Rule 404(b) does not apply to intrinsic evidence. Each of the State's contentions is misguided.

[¶20] First, *Cardenas* and *Bromley* do not, as the State suggests, stand for the bald proposition that any evidence that may explain some aspect of the charged crime is not evidence of uncharged misconduct. Our analysis of the alleged 404(b) evidence in each of those cases was more discriminating than that. *See Cardenas*, ¶¶ 8–9, 330 P.3d at 810–11 (examining the jury instructions and probable cause affidavit to determine whether the challenged photographs were uncharged misconduct evidence); *Bromley v. State*, 2007 WY 20, ¶ 27, 150 P.3d 1202, 1211 (Wyo. 2007) (examining the challenged testimony against the crimes charged to determine whether it was uncharged misconduct evidence).

[¶21] Employing the same analysis here, we begin by considering the charge filed against Mr. Vinson: one count of aggravated assault and battery for kicking SK in the head. The State did not charge Mr. Vinson with a sex crime. The probable cause affidavit mentioned the two instances of sexual intercourse without consent, but did not tie those instances to the alleged assault either by their timing or the nature of the injuries SK sustained. Moreover, the record is clear that both sexual intercourse incidents occurred after Mr. Vinson kicked SK in the head, not during the assault as the State represented prior to trial. We easily conclude under these circumstances that the sexual intercourse evidence is uncharged misconduct evidence subject to Rule 404(b).

[¶22] Second, while "[w]e have said that evidence of other crimes, wrongs, or acts is intrinsic when it 'and the evidence of the crime charged are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged,'" *Leyva*, ¶ 22, 165 P.3d at 453 (citation omitted), the State fails to acknowledge that we have used the term "intrinsic" to describe both charged and uncharged misconduct evidence. *Cardenas*, ¶ 9, 330 P.3d at 811 (charged); *Roeschlein v. State*, 2007 WY 156, ¶ 13, 168 P.3d 468, 473 (Wyo. 2007) (charged); *Leyva*, ¶¶ 22–24, 165 P.3d at 453 (uncharged); *Reay v. State*, 2008 WY 13, ¶ 11, 176 P.3d 647, 651 (Wyo. 2008) (uncharged); *Bromley v. State*, 2009 WY 133, ¶ 27, 219 P.3d 110, 117 (Wyo. 2009) (uncharged); *Birch*, ¶ 21, 421 P.3d at 535 (uncharged). Most important, having described certain "other acts" evidence as "intrinsic," we have clearly conditioned its admission on proper Rule 404(b) analysis, explaining:

> Evidence of "other crimes, wrongs, or acts," intrinsic or not, may improperly invite the jury to convict a defendant because of other misdeeds, not because of his guilt of the crime charged. Such evidence should be admitted only when it has some proper purpose, is relevant, and is more probative than

> prejudicial. . . . [T]his is the result W.R.E. 404(b) is designed to accomplish. For that reason, placing intrinsic evidence beyond the reach of W.R.E. 404(b) would be "unwise and wrong." 1 Mueller & Kirkpatrick, *supra*, § 4:33, at 818. *See also* 22 Wright & Graham, *supra*, § 5239.

*Leyva*, ¶ 24, 165 P.3d at 453; *see also Reay*, ¶ 11, 176 P.3d at 651 (recognizing our holding in *Leyva* that intrinsic uncharged misconduct evidence is still subject to Rule 404(b)); *Bromley*, ¶ 27, 219 P.3d at 117 ("Uncharged misconduct evidence that is 'intrinsic' to the facts surrounding the crime is not thereby insulated from analysis under W.R.E. 404(b).").

[¶23] We will not reassess whether Rule 404(b) should apply to intrinsic uncharged misconduct evidence as the State requests. We hold that even if the sexual intercourse evidence is intrinsic because it is "inextricably intertwined" with the charged offense or part of a "single criminal episode," Rule 404(b) governs its admissibility. *Leyva*, ¶¶ 22–23, 165 P.3d at 453; *Reay*, ¶ 11, 176 P.3d at 651; *Bromley*, ¶ 27, 219 P.3d at 117. The State should have provided notice of its intent to introduce the uncharged misconduct evidence, identified a proper purpose for the evidence, and explained why the evidence was more probative than unfairly prejudicial. *See, e.g.*, *Gleason*, ¶ 18, 57 P.3d at 340. And the district court should have followed the mandatory procedure to determine its admissibility, at least conditionally. *Id.* ¶ 27, 57 P.3d at 342–43; *Broberg*, ¶ 16 n.4, 428 P.3d at 171 n.4; *see also Volpi v. State*, 2018 WY 66, ¶ 17, 419 P.3d 884, 890 (Wyo. 2018) (emphasizing our preference for pretrial 404(b) determinations but acknowledging "not all 404(b) issues can be definitively resolved prior to trial" and a conditional pre-trial ruling may be appropriate).

[¶24] Because it remains difficult, if not impossible, to apply the abuse of discretion standard where a 404(b) issue is not squarely brought to the trial court for a full and timely *Gleason* hearing, our decision turns on whether Mr. Vinson was prejudiced. *Broberg*, ¶ 19, 428 P.3d at 172; *see also Gleason*, ¶ 18, 57 P.3d at 340 ("We do not apply [the *Gleason* analysis] on appeal; rather, it is intended to be conducted by the trial court."). "Error is prejudicial if there is a reasonable possibility that the verdict might have been more favorable to the defendant if the error had not been made." *Broberg*, ¶ 19, 428 P.3d at 172 (quoting *Vigil v. State*, 2010 WY 15, ¶ 11, 224 P.3d 31, 36 (Wyo. 2010)). "Prejudicial error requires reversal, while harmless error does not." *Id.* (quoting *Payseno v. State*, 2014 WY 108, ¶ 20, 332 P.3d 1176, 1182 (Wyo. 2014)). We conclude Mr. Vinson was not prejudiced by admission of the sexual intercourse evidence.

[¶25] The jury could reasonably have relied on SK's and Mr. Vinson's testimony about the assault itself to support its guilty verdict. SK testified that she slapped Mr. Vinson once in the face. The next thing she remembered was waking up on the floor between the kitchen and the living room. She could not hear anything except a loud ringing in her head. Her head hurt and she felt nauseous. There was blood all over the floor and when she touched

her face there was blood all over her hand. She was fully clothed and it was dark outside. Mr. Vinson admitted he "smoked [SK] right across the side of the head"; though he contended he made contact with his bare foot while they were in the bedroom, and that he kicked SK accidentally and in self-defense. It was within the jury's "exclusive province" to determine whether SK or Mr. Vinson was more credible. *McGill v. State*, 2015 WY 132, ¶ 9, 357 P.3d 1140, 1144 (Wyo. 2015) (citation omitted).

[¶26] The medical evidence corroborated SK's version of events. Dr. Eric Hintz, the neurosurgeon who consulted on SK's case at the hospital in Billings, testified that SK's injuries consisted of the following: two skull fractures to the same bone along the left side of her head[3]; swelling and bruising of her eyes and face; a cut of her ear and a ruptured eardrum; blood in both nasal holes; tenderness across the bridge of her nose; a broken nose, which could account for the blood in her nose (though doctors could not determine with certainty whether the fracture was new or old and SK reported fracturing her nose in the past); and bruising and swelling of her shoulder and both legs.

[¶27] According to Dr. Hintz, SK's head injuries were consistent with blunt force trauma. Dr. Hintz's testimony also highlighted the fact that Mr. Vinson's claim that he accidentally kicked SK in self-defense with his bare foot did not account for the full extent of SK's injuries—which included not just two skull fractures to the same bone in her head but also ear and nose injuries, along with an array of bruising throughout her body. When asked whether SK's injuries could have been caused by a bare foot, he responded, "I think it would be more difficult to receive depressed skull fractures as a result of being kicked by someone's foot. And it would be -- the amount of force that it would take to fracture someone's skull I would imagine would cause injury to the person's foot who supplied that force as well." Mr. Vinson claimed to have had some bruising on the top of his foot and difficulty walking for a couple weeks after kicking SK. But Mr. Berlinger testified he saw Mr. Vinson briefly on the morning after the alleged assault with his shoes on and walking normally. Mr. Berlinger saw Mr. Vinson again three days later. Mr. Vinson was not limping.

[¶28] The blood evidence further corroborated SK's testimony. When Chief Brenner executed a search warrant on Mr. Vinson's home in Greybull on March 29, 2018, he text-messaged SK photographs of locations in the home and she indicated where police should find blood evidence. Using the chemical Luminol and a Bluestar kit, police officers tested for blood in those areas. When they sprayed the area between the kitchen and the living room where SK told them she woke up in a puddle of blood, they observed "a circle of blood about 16 inches in diameter with a boot print . . . in the blood."

---

[3] A non-contrast CT head scan showed "swelling of [SK's] scalp on the left and a bruise." Her skull fracture was "moderately displaced," meaning it was "pushed in slightly," around two millimeters. Doctors found some "collection of blood between the brain and the skull," but no brain bruising or swelling.

[¶29] Considering the record as a whole, it would be unfair to characterize the challenged sexual intercourse evidence as brief or isolated—SK, her sister, and Chief Brenner each testified about the nonconsensual sexual intercourse incidents to different degrees. *Cf. Broberg*, ¶ 20, 428 P.3d at 172. That evidence was outweighed, however, by compelling evidence of Mr. Vinson's guilt. In fact, neither the prosecutor nor defense counsel even mentioned the sexual intercourse evidence during closing argument. *See id.* ¶ 20, 428 P.3d at 172–73; *see also Swett*, ¶ 47, 431 P.3d at 1147. We therefore find no reasonable possibility the verdict would have been more favorable to Mr. Vinson had the sexual intercourse evidence been excluded. *Broberg*, ¶ 19, 428 P.3d at 172.

[¶30] Affirmed.