2009 WY 31

**Edward Olynn TAYLOR, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. S–08–0158.**

Supreme Court of Wyoming.

March 6, 2009.

Representing Appellant: Diane M. Lozano, State Public Defender; Tina N. Kerin, Appellate Counsel; Kirk A. Morgan, Senior Assistant Appellate Counsel. Argument by Mr. Morgan.

Representing Appellee: Bruce A. Salzburg, Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Eric A. Johnson, Director, and Charles F. Pelkey, Student Intern, Prosecution Assistance Program. Argument by Mr. Pelkey.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1] The appellant appeals his conviction on numerous criminal charges, including first-degree premeditated murder, on the ground that the district court abused its discretion by admitting certain uncharged misconduct evidence. Finding no error, we affirm.

### ISSUE

[¶ 2] Did the district court abuse its discretion by admitting evidence of two prior instances in which the appellant threatened someone?

### FACTS

[¶ 3] We will recite the facts underlying the crimes charged in this case in some detail because they provide the context for the issue presented. To avoid unwarranted publicity, we will refer to the participants by their first name only, or by an identifier such as "the appellant" or "the victim."

[¶ 4] The appellant met Beth in 1992, at a time that she was in the process of obtaining a divorce from her first husband, Troy. Beth and the appellant were married in 1994. That marriage ended in divorce in 2004. Prior to the divorce, Beth had entered into a relationship with John. Beth's relationship with John did not endure, however, and she reconciled with the appellant in 2005. They remarried in 2006. That road became equally rocky, and the appellant filed for divorce on March 20, 2007, after learning that Beth was involved in a sexual relationship with the eventual murder victim.

[¶ 5] During the weekend of March 29–April 1, 2007, Beth went from her home in Casper to Cheyenne to visit her daughter. The appellant telephoned Beth repeatedly. Early in the afternoon of Sunday, April 1, Beth's daughter told the appellant when he called again that Beth had returned to Casper. At about the same time, the appellant's neighbor saw him loading "long guns" into his pickup.

[¶ 6] At about 2:30 or 3:00 p.m., the appellant drove over to the victim's house looking for Beth. She was not there, but the appellant saw the victim standing outside his residence. According to the appellant's trial testimony, the victim looked at him "with disdain" as he passed. This angered the appellant, who returned home, where he consumed beer and tequila.

[¶ 7] Upon returning to Casper, Beth went to the victim's house, where the two of them and a friend watched television. She left the house before 6:30 p.m., at which time she was accosted by the appellant, who had been parked out of sight in a nearby alley. During the ensuing argument, the appellant reached into Beth's vehicle, grabbed her by the hair, and slammed her head against the window. He then declared that, though he had not carried through with his earlier threat to kill John, he would "kill somebody this time."

[¶ 8] Taking this threat seriously, Beth drove to the police station, with the appellant following her. When they arrived at the police station, the appellant again approached Beth, this time pointing a .45 caliber pistol at her. He told her he would not kill her if she returned home with him. Fearing she would be killed, Beth slumped against the side of her vehicle. The appellant shoved the gun back into his pants while stating that he

would "kill somebody." Beth went into the police station as the appellant drove away.

[¶ 9]   Immediately upon entering the police station, Beth telephoned the victim to warn him.   The victim told her to hang up and call 911, and that he would watch for the appellant.   Beth did as she was told, her call to 911 being logged in at 6:25 p.m.   Beth described the encounter and told the dispatcher that she had seen a shotgun in the appellant's truck.   Three minutes later, the dispatcher received a "hang up" 911 call from the victim's residence.   Officers responding to the call found the victim dead on his kitchen floor.   He was lying on his back, with a shotgun across his knee and a cordless telephone on the floor next to his hand.   Pellets from a shotgun blast had made divots in the floor under his head.

[¶ 10]   The appellant's own trial testimony and the testimony of a friend established what had happened: The victim had closed and locked his front door when he saw the appellant arrive.   The appellant blasted his way through the front door with his 12–gauge shotgun.   The victim then fired his own shotgun at the appellant, inflicting only minor injuries.   The appellant returned fire, hitting the victim in the chest with a disabling blow.   He then walked up to the wounded victim and fired a second shot directly at his head.   The appellant fled the scene, driving to a friend's house north of Casper. When the appellant confessed the murder to his friend, the latter contacted the police and arranged for the appellant's surrender.

[¶ 11]   After the appellant's arrest, a preliminary hearing, and a district court arraignment, the charges against him were finalized in an Amended Information filed on October 8, 2007: one count of first-degree premeditated murder, in violation of Wyo. Stat. Ann. § 6–2–101 (LexisNexis 2007); one count of felony murder, in violation of Wyo. Stat. Ann. § 6–2–101 (LexisNexis 2007); one count of aggravated burglary, in violation of Wyo. Stat. Ann. § 6–3–301(a) and (c)(i)(ii) (LexisNexis 2007); one count of threatening to use a drawn deadly weapon on another, in violation of Wyo. Stat. Ann. § 6–2–502(a)(iii) (LexisNexis 2007); one count of possessing or transporting a deadly weapon with the unlawful intent to threaten the life or physical well-being of another, in violation of Wyo. Stat. Ann. § 6–8–103 (LexisNexis 2007); and one count of battery, in violation of Wyo. Stat. Ann. § 6–2–501(b) and (d) (LexisNexis 2007).   He was convicted by a jury on all six counts.

## STANDARD OF REVIEW

[¶ 12]   We recently reiterated both the accepted trial court process for determining whether to admit uncharged misconduct evidence and this Court's standard for reviewing such determinations:

> We review a district court's rulings on the admissibility of evidence, including uncharged misconduct evidence, for an abuse of discretion, and we will not reverse absent a clear abuse of such discretion. *Bromley v. State*, 2007 WY 20, ¶ 8, 150 P.3d 1202, 1206 (Wyo.2007).   "A trial court abuses its discretion when it could not have reasonably concluded as it did." *Id.* at ¶ 8, at 1206–1207.   The admissibility of uncharged misconduct evidence is governed by W.R.E. 404(b):

>> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.   It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

> The district court is to determine the admission of proffered evidence under this rule by applying the following test:

>> [B]ecause uncharged misconduct evidence carries an inherent danger for prejudice, we have also adopted a mandatory procedure for testing its admissibility: (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice; and (4) upon request, the trial court must instruct the jury that the similar acts evidence is to be consid-

ered only for the proper purpose for which it was admitted.

*Gleason v. State,* 2002 WY 161, ¶ 18, 57 P.3d 332, 340 (Wyo.2002). "Admissibility under W.R.E. 404(b) is not limited to the purposes set forth in the rule, and we have adopted a liberal approach toward admitting uncharged misconduct evidence." *Id. Harris v. State,* 2008 WY 23, ¶¶ 5–6, 177 P.3d 1166, 1168 (Wyo.2008).

## DISCUSSION

[¶ 13] The appellant filed a pre-trial demand for notice of the State's intent to introduce evidence under W.R.E. 404(b). In its response, the State noted that the appellant's defense "most likely" would be "self-defense or lack of the requisite mental state for first or second-degree murder." The State then proffered testimony in regard to three previous instances to show that the appellant "has a long history of threats with and without guns and it is unlikely he was motivated by self-defense in this case." In addition, the State contended that the evidence of the earlier threats "illustrate[s] the [appellant's] motive and intent...."

[¶ 14] The first instance of which evidence was proffered occurred in 1989 or 1990. The appellant had allegedly approached a vehicle containing two men, Rick and Dean. The appellant suspected Dean of "pursuing" his girlfriend. The appellant was angry, and he approached the vehicle with a pistol in his hand. When the appellant shoved the pistol under Dean's chin, Rick disarmed him and took the pistol. The incident was not reported to the police.

[¶ 15] The second incident of alleged uncharged misconduct occurred in 1997 at the home of Beth's first husband, Troy. Beth and the appellant, who were married at the time, had gone to Troy's house for some purpose involving Beth's and Troy's daughter. A disagreement arose between Troy and the appellant as to whether the girl could go inside Troy's house. The appellant pulled a .45 caliber pistol, pointed it at Troy, and then drove off. The appellant was later charged with reckless endangerment, to which he en-

tered a plea of *nolo contendere,* with the case eventually being dismissed via deferred prosecution under Wyo. Stat. Ann. § 7–13–301 (Michie 1997).

[¶ 16] The third incident occurred in 2005. Beth and the appellant had separated, and Beth had been living with John. The latter two had then separated. John called Beth's house to discuss a television set. The appellant answered the telephone and, during the ensuing conversation, threatened to go to John's house and kill him. John reported the threat to the police, but no action was taken.

[¶ 17] In its memorandum submitted in support of admission of the proffered testimony, the State indicated that the evidence was probative of such concepts as intent, motive, knowledge, malice, premeditation, identity, continuing course of conduct, and corroboration. Specifically, the State contended that the evidence was relevant to prove intent and motive, and to rebut any claim of self-defense. The appellant filed a lengthy objection to the State's uncharged misconduct evidence. While conceding that the question of intent was at issue, the appellant contended that identity was not at issue and that he did not intend to argue self-defense. The bulk of the appellant's memorandum addressed this Court's recent jurisprudence in regard to uncharged misconduct evidence, including *Howard v. State,* 2002 WY 40, 42 P.3d 483 (Wyo.2002); *Gleason v. State,* 2002 WY 161, 57 P.3d 332 (Wyo.2002); *Williams v. State,* 2004 WY 117, 99 P.3d 432 (Wyo.2004); and *Holloman v. State,* 2005 WY 25, 106 P.3d 879 (Wyo.2005).

[¶ 18] The question of the admissibility of the uncharged misconduct evidence was heard at a general motion hearing on September 21, 2007. As it did in its written submission, the State argued that the prior threats were relevant because they were probative of motive and intent, which went to the appellant's position that his crime was manslaughter, not murder. The State contended that the evidence countered the "defense" of "sudden heat of passion," and that it tended to establish malice.[1]

---

1. "Sudden heat of passion" is not, of course,    technically a "defense" to a murder charge, but

[¶ 19] The appellant presented a four-pronged argument at the motion hearing: first, he contended that all three incidents were more prejudicial than probative; second, he decried the State's alleged "laundry list" of justifications for admission of the evidence; third, he argued that the evidence was merely being offered as propensity or character evidence; and fourth, he contended that the 1989–90 incident was too remote in time to be relevant or probative.

[¶ 20] The district court took the matter under advisement, issuing a decision letter on October 1, 2007. In its decision letter, the district court meticulously reviewed and applied this Court's precedent setting forth the standards for the admissibility of uncharged misconduct evidence under W.R.E. 404(b). The district court's analysis is too lengthy for us to repeat here, but we will note some of the central findings and conclusions.

[¶ 21] After reviewing the known facts, and setting forth the three instances of uncharged misconduct, the district court quoted the evidentiary rule and reviewed its purpose. Specifically, citing *Daniel v. State*, 923 P.2d 728, 734 (Wyo.1996) and *Virgilio v. State*, 834 P.2d 1125, 1128 (Wyo.1992), the district court prefaced its analysis by noting that, while uncharged misconduct evidence is admissible to prove or disprove "consequential fact[s]" such as intent, knowledge, motive, preparation, or plan, it is not admissible to show that a defendant has a propensity to commit crimes. The district court then applied the mandatory four-part test this Court has adopted for testing the admissibility of uncharged misconduct evidence:

(1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice; and (4) upon request, the trial court must instruct the jury that the [uncharged misconduct] evidence is to be considered only for the proper purpose for which it was admitted.

*Gleason*, 2002 WY 161, ¶ 18, 57 P.3d at 340.

[¶ 22] As to the first question—whether the evidence was offered for a proper purpose—the district court agreed with the State that the evidence was properly offered to prove motive and intent, especially as those concepts helped to establish the element of malice. The district court concluded that evidence of the three prior instances was probative, in particular, of the concept of jealousy as motive. We have previously quoted noted evidence scholar Edward J. Imwinkelried's explanation of the part played by motive and intent where jealousy or a similar emotion is involved:

Motive is not an ultimate fact or element of the crime; rather it is an intermediate, evidentiary fact. The courts have variously described the concept of motive as the "reason that nudges the will and prods the mind to indulge the criminal intent," an "inducement or state of feeling that impels and tempts the mind to indulge in a criminal act," and "the moving force which impels to action for a definite result." While intent accompanies the actus reus, the motive comes into play before the actus reus. The motive is a cause, and the actus reus is the effect.

*Mitchell v. State*, 865 P.2d 591, 597 (Wyo. 1993) (quoting Edward J. Imwinkelried, *Uncharged Misconduct Evidence* § 3.15 at 35–36 (1992 & Supp.1993)). We have applied this reasoning in marital homicide cases, and we see no reason why it should not also apply in cases where the victim is not the spouse, but the spouse's consort. *See, e.g., Smizer v. State*, 752 P.2d 406, 410 (Wyo.1988); *Ortega v. State*, 669 P.2d 935, 944 (Wyo.1983), *overruled on other grounds by Jones v. State*, 902 P.2d 686 (Wyo.1995); and *Alcala v. State*, 487 P.2d 448, 455 (Wyo.1971), *cert. denied* 405 U.S. 997, 92 S.Ct. 1259, 31 L.Ed.2d 466 (1972).

is the statutory language that distinguishes voluntary manslaughter from first- and second-degree murder. *See* Wyo. Stat. Ann. § 6–2–105(a)(i) (LexisNexis 2007) and *Yung v. State*, 906 P.2d 1028, 1035 (Wyo.1995). For a discussion of the conceptual distinctions between manslaughter and second-degree murder, *see* Eric A. Johnson, *The Crime That Wasn't There: Wyoming's Elusive Second–Degree Murder Statute*, 7 Wyo. L.Rev. 1 (2007).

[¶ 23] We cannot say that the district court abused its discretion in determining that all three instances of prior misconduct were being offered for a proper purpose. For all intents and purposes, the only question facing the jury in this case was whether the appellant acted in a sudden heat of passion, or acted with malice. It was appropriate for the State in these circumstances to produce evidence of motive and intent.

■ [¶ 24] The second question a trial court must answer in deciding whether to admit uncharged misconduct evidence is whether the evidence is relevant. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." W.R.E. 401. This question is usually answered, at least in part, by an affirmative response to the first question. It should nearly go without saying that any proper purpose for admission of the evidence is a purpose that is relevant. In the foregoing discussion, for instance, if intent and malice were not relevant, they would not be proper purposes for admission of the uncharged misconduct evidence. The district court correctly concluded that the uncharged misconduct evidence was relevant in this case because it went to the heart of the matter—in effect, it tended to rebut the appellant's "heat of passion" argument. Stated in terms of the rule, the evidence made it less likely that the appellant acted suddenly and without malice, motivated only by the "heat of passion."

■ [¶ 25] In *Bhutto v. State*, 2005 WY 78, ¶ 24, 114 P.3d 1252, 1263 (Wyo.2005), we found evidence of prior threats and assaults to be admissible to prove motive and intent, to help the jury understand the relationship between the parties, and to counter a defense, such as accident or lack of intent. Although that holding was in the context of the first question—whether the evidence was offered for a proper purpose—the conclusion follows that if evidence is admissible to prove such concepts, it is, *ipso facto*, relevant to those issues. In the instant case, the appellant contended that the killing resulted from extreme provocation and a sudden heat of passion—the hallmarks of voluntary manslaughter. The State's proffered evidence directly rebutted that contention by showing the appellant engaging in threatened violence even when not under extreme provocation. The district court rested its conclusion that the evidence was relevant in this history of purposeful and intended responses to situations arousing jealousy over Beth's interactions with other men. That conclusion was not an abuse of discretion because it was a reasonable conclusion given the facts. "When evidence is offered under the provisions of W.R.E. 404(b), there is no abuse of discretion so long as there is a legitimate basis for the trial court's ruling." *Moore v. State*, 2003 WY 153, ¶ 22, 80 P.3d 191, 197 (Wyo.2003).

■ [¶ 26] The third question to be asked in a trial court's determination of the admissibility of uncharged misconduct evidence is whether the probative value of the evidence is substantially outweighed by its potential for unfair prejudice. This part of the test to be applied under W.R.E. 404(b) is consistent with W.R.E. 403, which applies the same general rule to all evidence. In *Gleason*, 2002 WY 161, ¶ 27, 57 P.3d at 342–43, we set out the process to be followed in balancing probative value against unfairly prejudicial effect:

In determining the probative value of prior bad acts evidence, the trial court should consider the following factors:

1. How clear is it that the defendant committed the prior bad act?

2. Does the defendant dispute the issue on which the state is offering the prior bad acts evidence?

3. Is other evidence available?

4. Is the evidence unnecessarily cumulative?

5. How much time has elapsed between the charged crime and the prior bad act?

Evidence is unfairly prejudicial if it tempts the jury to decide the case on an improper basis. In balancing against its probative value the unfair prejudice created by the evidence, the trial court should consider the extent to which the evidence distracts the jury from the central question

whether the defendant committed the charged crime. The trial court should weigh these additional factors against the probative value of the evidence:

1. The reprehensible nature of the prior bad act. The more reprehensible the act, the more likely the jury will be tempted to punish the defendant for the prior act.

2. The sympathetic character of the alleged victim of the prior bad act. Again, the jury will be tempted to punish the defendant for the prior act if the victim was especially vulnerable.

3. The similarity between the charged crime and the prior bad act. The more similar the acts, the greater is the likelihood that the jury will draw the improper inference that if the defendant did it once, he probably did it again.

4. The comparative enormity of the charged crime and the prior bad act. When the prior act is a more serious offense than the charged crime, the introduction of that act will tend to place the defendant in a different and unfavorable light.

5. The comparable relevance of the prior bad act to the proper and forbidden inferences. Evidence of the prior bad act may be much more probative of bad character than it is of any legitimate inference permitted by Rule 404(b).

6. Whether the prior act resulted in a conviction. The jury may be tempted to punish the defendant if they believe he escaped punishment for the prior bad act.

[¶ 27] The record reveals that the district court scrupulously complied with the guidelines set forth above, devoting a separate section of its decision letter to each of the four general issues, and discussing, in turn, each of the eleven factors directed specifically to balancing probative value against the danger of unfair prejudice. Rather than repeat that lengthy analysis here—an analysis we find to have been thorough and thoughtful—we will mention only the three factors upon which the appellant focuses in arguing that the district court was incorrect in its conclusions.[2]

[¶ 28] The appellant contends that the district court erred in the following particulars: (1) the district court's conclusion that the prior acts were sufficiently similar to the charged act to be probative of the appellant's reaction to jealousy and conflict; (2) the district court's conclusion that the prior acts were sufficiently dissimilar to the charged act, in that the appellant maintained some level of self-control in the former, that the jury would not be swayed toward making the improper inference of bad character; and (3) the district court's conclusion that, because the prior acts were less serious than the charged act, the jury would likewise not be inclined to draw that same improper inference. In short, the appellant argues that the uncharged misconduct evidence was probative of nothing more than bad character, and should not have been admitted.

[¶ 29] We do not agree with the appellant. An abuse of discretion is not proven by a showing that a different decision could have been made. Our job is not to second-guess the findings of the district court, especially where those findings are based upon a thorough review of the proffered testimony and a detailed application of the appropriate law. The existence of W.R.E. 404(b) presupposes that some uncharged misconduct evidence is admissible. In the instant case, taking cognizance of the nature of the charges and the nature of the uncharged misconduct evidence, the district court determined that evidence of two of the prior acts was offered for a proper purpose—to prove motive and intent as those concepts relate to malice—that it was relevant because it tended to make the existence of those consequential facts more likely than not, and that it was more probative than unfairly prejudicial because it met the tests set forth in *Gleason* and similar cases. We see no abuse

2. The discussion that follows will be better understood if we note at this point that, in an earlier portion of its decision letter, the district court had concluded that the 1989–90 incident was too remote in time to be relevant. Thus, the district court's balancing of probative value against the danger of unfair prejudice addressed only the second and third incidents.

of discretion in the process or in the conclusions.

[¶ 30]  For the sake of completeness, we will mention the fourth element of the mandatory four-part test for the admissibility of uncharged misconduct evidence: whether a limiting instruction was given, if requested. The district court's order admitting the evidence stated that "a limiting instruction is appropriate in the case and [the court] will consider any limiting instruction submitted by the Defendant." We could not locate a limiting instruction in the record, and the parties have not indicated that one was ever offered or given. Consequently, we conclude that the fourth factor is inapplicable.

See also 74 P.3d 714.

## CONCLUSION

[¶ 31]  The district court did not abuse its discretion in admitting evidence of two of three incidents proffered by the State. The evidence was offered for a proper purpose, it was relevant, and its probative value was not outweighed by the danger of unfair prejudice.

[¶ 32]  We affirm.