2009 WY 129

**Stephen PALMER, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. S–08–0252.

Supreme Court of Wyoming.

Oct. 22, 2009.

Representing Appellant: Diane Lozano, State Public Defender; Tina N. Kerin, Appellate Counsel; and David E. Westling, Senior Appellate Counsel.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Leda M. Pojman, Senior Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1] Appellant, Stephen Palmer (Palmer), seeks review of his four convictions for sexual abuse of a minor in the second degree. We will affirm.

[¶ 2] Palmer raises these issues:

I. Does Wyo. Stat. Ann. § 6–2–316(a)(i) criminalize sexual contact with a person over the age of fifteen years?

II. Is the statute as applied to Mr. Palmer unconstitutionally vague?

III. Did the trial court abuse its discretion by admitting uncharged misconduct

evidence which had not been a part of the State's original W.R.E. 404(b) notice?

The State conformed its statement of the issues to that set out above.

## ISSUES I AND II

[¶ 3] Contemporaneously with the publication of this opinion, we also published our opinion in *Crain v. State*, and *May v. State*, 2009 WY 128, 218 P.3d 934 (Wyo.2009). In those cases we resolved the issues raised by Palmer in Issues I and II and by reference to the *Crain* and *May* cases we also apply that same reasoning in this case. Hence, we reject both of Palmer's challenges to the affected statutes.

## FACTS AND PROCEEDINGS

[¶ 4] One of the counts upon which Palmer was found guilty occurred on September 6, 2007, and the other three occurred on September 14, 2007. All these events took place in the victim's family home. The victim was the daughter of a coworker of Palmer. Palmer, the victim, and the victim's parents all worked at Little America in Sweetwater County, and it was there that Palmer met the victim, who he worked with and supervised to some extent. The victim was born in November 1991 and was not yet 16 years old when the criminal acts occurred. The victim was a reluctant witness and she testified that her relationship with Palmer was entirely voluntary and consensual.

[¶ 5] The only facts truly pertinent to this appeal concern an assertion by Palmer that W.R.E. 404(b)[1] evidence was improperly admitted at his trial over his objection. In a Scheduling and Discovery Order entered of record on February 13, 2008, the district court, inter alia, ordered the State to give notice to Palmer of its intent, if any, to offer W.R.E. 404(b) evidence at trial. That order also provided that:

> If a motion to suppress or exclude evidence under Rule 404(b) W.R.E. is filed, each party shall have at the hearing on this motion proposed findings of fact and conclusions of law which cover all of the factors set forth in *Gleason v. State*, 2002 WY 161, 57 P.3d 332 (Wyo.2002). The proposed findings of fact and conclusions of law may be in lieu of a memorandum of law.

[¶ 6] On March 4, 2008 the State gave notice to Palmer that it intended to offer 404(b) evidence. The district court conducted a hearing on that notice on July 16, 2008. By order entered on August 11, 2008, the district court limited the use of some of the proposed 404(b) evidence and denied the admission of some of it altogether. To make a long story short, the State proposed to use certain 404(b) evidence, the district court limited the use of that evidence, and there was no violation of the district court's order in that regard. However, a second Rule 404(b) issue became apparent during the course of Palm-

1. W.R.E. 404 has been amended since the time of the criminal proceedings in this case, but we include it here in its current form.

   **Rule 404. Character evidence not admissible to prove conduct; exceptions; other crimes.**

   (a) *Character Evidence Generally.*—Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

   > (1) Character of Accused.—Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same;

   > (2) Character of Victim.—Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;

   > (3) Character of Witness.—Evidence of the character of a witness, as provided in Rules 607, 608, and 609.

   (b) **Other crimes, wrongs, or acts.** **Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident,** *provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general al nature of any such evidence it intends to introduce at trial.* [This rule was amended effective January 1, 2009. We have included that version of the rule here because the amendment does affect the outcome of this case.]

er's trial, and we set out the details of that development below.

## DISCUSSION

[¶ 7] The evidence which animates the Rule 404(b) issue was not the 404(b) evidence discussed above. Rather it was entirely different evidence that defense counsel had not recognized as 404(b) evidence until after the trial had begun. This sort of issue and the applicable standard of review are quite familiar to the Court:

> We recently reiterated both the accepted trial court process for determining whether to admit uncharged misconduct evidence and this Court's standard for reviewing such determinations:
>
>> We review a district court's rulings on the admissibility of evidence, including uncharged misconduct evidence, for an abuse of discretion, and we will not reverse absent a clear abuse of such discretion. *Bromley v. State*, 2007 WY 20, ¶ 8, 150 P.3d 1202, 1206 (Wyo.2007). "A trial court abuses its discretion when it could not have reasonably concluded as it did." *Id.* at ¶ 8, at 1206–1207. The admissibility of uncharged misconduct evidence is governed by W.R.E. 404(b):
>>
>>> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
>>
>> The district court is to determine the admission of proffered evidence under this rule by applying the following test: [B]ecause uncharged misconduct evidence carries an inherent danger for prejudice, we have also adopted a mandatory procedure for testing its admissibility: (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice; and (4) upon request, the trial court must instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.
>>
>> *Gleason v. State*, 2002 WY 161, ¶ 18, 57 P.3d 332, 340 (Wyo.2002). "Admissibility under W.R.E. 404(b) is not limited to the purposes set forth in the rule, and we have adopted a liberal approach toward admitting uncharged misconduct evidence." *Id.*
>
> *Harris v. State*, 2008 WY 23, ¶¶ 5–6, 177 P.3d 1166, 1168 (Wyo.2008).

*Taylor v. State*, 2009 WY 31, ¶ 12, 203 P.3d 408, 410–11 (Wyo.2009); *Wease v. State*, 2007 WY 176, ¶¶ 48–54,170 P.3d 94, 109–114 (Wyo. 2007).

[¶ 8] Palmer's two-day trial was held on August 11–12, 2008. The witness who was to give the asserted W.R.E. 404(b) testimony was Brianna Maxfield. The matter was called to the attention of the district court, in the context of a 404(b) issue, just before opening statements and just after the jury had been selected and seated on the first day of trial. However, Maxfield's name and the substance of her testimony had been included in the State's April 21, 2008 witness and exhibit list, and defense counsel explained that he had not previously perceived it as 404(b)-type evidence because the State had given a specific W.R.E. 404(b) notice which did not include her testimony as one of its items. It is apparent that the State did not perceive the disputed evidence as coming under the umbrella of Rule 404(b) either. In any event, having been given notice that Maxfield would testify and what the gist of her testimony was to be (which the record shows was well known to Palmer at an early point in the proceedings), Palmer raised no pretrial objection below.

[¶ 9] After the victim had completed her testimony, the district court let the jury go early for the day so that it could address this potential W.R.E. 404(b) evidence matter in what it called a *"Gleason* Hearing." The hearing bears out that the district court made an admirably conscientious effort to fulfill all the requirements set out in the *Gleason* case, despite the circumstance that the matter came up mid-trial. At the core of

the district court's reasoning process was this Court's decision in *Reay v. State*, 2008 WY 13, ¶¶ 9–19, 176 P.3d 647, 650–53 (Wyo. 2008). One of Palmer's principal objections to this testimony was that it was actually developed for use at the hearing into a stalking/protection petition filed by the victim's parents shortly after the events on September 14, 2007, and was not generated by the criminal charges that Palmer ultimately faced.

[¶ 10] Maxfield was also a fellow employee of Palmer's from Little America. Her testimony was offered for the purpose of showing Palmer had a "guilty mind," to rebut the story Palmer gave to the police, and to test his credibility. She testified that both Palmer, and the mother of Palmer's child, recruited her to give Palmer an alibi for September 14, 2007, by saying in some detail that she was on a date with Palmer that day and that he could not have been at the victim's home during the times the victim testified he was there. Maxfield agreed to do that and initially she told the story Palmer wanted her to tell to the police. However, after being informed of the penalties for perjury and some detailed questioning about the alibi evidence by sheriff's investigators, she admitted that the statement she gave was false and that Palmer and his former wife had put her up to it. The importance of this "perjury" was heightened by the coincidence that it tracked quite closely with the story Palmer gave the police about what he was doing out by the victim's home on one of the days that he was alleged to have had sexual relations with her. Palmer did not testify at his trial, but the statement he gave the police early in the investigation was admitted into evidence.

[¶ 11] The sheriff recorded the interview with Maxfield, but that recording was not made available to Palmer in discovery as required by the district court's scheduling and discovery order. Palmer essentially waived any objection to not getting a copy of the entire statement until mid-trial. The district court concluded that the evidence to be offered through Maxfield was admissible under exceptions to W.R.E. 404(b). The district court also offered to give a limiting instruction, but Palmer declined it.

[¶ 12] At the outset we note our agreement with the State's position that Palmer does not specifically identify the evidence he challenges herein (although it is not terribly difficult to divine what evidence is of concern here), nor does he directly challenge its admissibility under W.R.E. 404(b). Furthermore, he does not discuss or criticize the position the State took at trial, the district court's rationale for admitting the evidence in dispute, or the limiting instruction the district court offered to give at trial. Palmer offers no authority directly in support of his contention that it was "bad acts" evidence as contemplated by W.R.E. 404(b). The core of his argument is that it was not included in the Rule 404(b) notice, that it was a surprise at trial, and that he was unable to adjust his trial strategy to counter that damning evidence.

[¶ 13] Those familiar with the practice of criminal law are well aware of this Court's efforts to give form and structure to the treatment of evidence that comes under the aegis of W.R.E. 404(b), so as to ensure insofar as possible that inadmissible evidence is not presented to the jury. We have been especially concerned about such evidence being sprung upon a defendant as a surprise at trial. As one follows the mutations and permutations this thorny issue has taken over the years, it is evident that our efforts have not yet produced a "fail-safe" method to ensure that 404(b) evidence receives the sort of scrutiny that is demanded by the guidance provided by the rule itself and the case law construing and enlarging upon its broad and general, yet still difficult to pin down, goals. The presiding judge in this case expressed his own concerns in that regard. At its most elementary level Rule 404(b) is aimed at "excluding" character evidence when it is used for an improper purpose, while at the same time providing for its admission for several specified purposes which serve as examples, but do not necessarily delimit admissibility for many others. 1 Christopher B. Mueller and Laird C. Kirkpatrick, *Federal Evidence* §§ 4:21, 4:22 and 4:37 (2007 and Supp.2009). One such unenumerated exception is that which has been categorized as evidence which completes the whole story.

*Leyva v. State,* 2007 WY 136, ¶¶ 17–30, 165 P.3d 446, 452–54 (Wyo.2007); 1 Mueller & Kirkpatrick, *infra,* § 4:33. As we opined in *Leyva,* such evidence remains subject to the analysis we require for the admission of 404(b) evidence. Finally, of the greatest importance here, the State posited from the outset that its intended use of the evidence was to show Palmer's "guilty mind."

*Guilty mind (policy not implicated).* Prior acts by the defendant may be admissible to indicate his guilty mind in connection with the charged offense, and typically here we are talking about acts that come *after* the charged crime. Included is proof that he fled from the scene or from the jurisdiction, resisted arrest, offered explanations that proved to be untrue (false exculpatory statements), used an alias, or false identification. Such proof does not require a general propensity inference. The argument is not that conduct shows an inclination, but that it shows that the defendant is aware of his guilt, which makes it more likely that he is guilty. The policies of Fed.R.Evid. 404 are not implicated in this logic. [Italics in original.]

1 Mueller & Kirkpatrick, *supra,* §§ 4:37 at 868–69, and see § 4:04, at 574 ("guilty mind" evidence may include suborning perjury or fabricating evidence). Although the district court did not specifically address the question of post-crime, "guilty mind" evidence, we conclude that the district court would have been correct in admitting the disputed evidence, on the basis that W.R.E. 404(b) analysis does not apply to post-crime "guilty mind" evidence such as that offered by the State in the instant case.

[¶ 14] We have carefully examined the record on appeal and we are unable to conclude that the district court abused its discretion in admitting the disputed testimony under the circumstances of this case.

## CONCLUSION

[¶ 15] For the reasons set out more fully above, the judgment and sentence of the district court are affirmed in all respects.