# THE SUPREME COURT, STATE OF WYOMING

# 2021 WY 92

APRIL TERM, A.D. 2021

August 11, 2021

BRADLEY DEAN JACKSON,

Appellant
(Defendant),

v.

S-21-0015

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Sheridan County*
*The Honorable John G. Fenn, Judge*

*Representing Appellant:*
> *Office of the Public Defender: Diane M. Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel. Argument by Mr. Morgan.*

*Representing Appellee:*
> *Bridget L. Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General; Timothy P. Zintak, Senior Assistant Attorney General. Argument by Mr. Zintak.*

*Before FOX, C.J., and DAVIS\*, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

*\* Chief Justice at time of oral argument.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Chief Justice.**

[¶1]    A jury convicted Bradley Jackson of strangulation of a household member.   On appeal, Mr. Jackson argues that the district court erred when it admitted evidence that he violated a no-contact order when he called the victim after his arrest, and that the victim's hearsay statement recorded on the responding officer's bodycam should not have been allowed as an excited utterance.   We affirm.

## *ISSUES*

[¶2]    Mr. Jackson raises three issues:

> I.  Was Mr. Jackson prejudiced by the admission of evidence that he violated a no-contact order when he called the victim from jail?

> II.  Did the district court err when it determined the victim's statement on the responding officer's bodycam was an excited utterance?

> III.  Did cumulative error deprive Mr. Jackson of a fair trial?

## *FACTS*

[¶3]    Bradley Jackson and K.W.'s five-year relationship ended after Mr. Jackson came home from the bar, accused K.W. of cheating, repeatedly threw her to the bed, choked her, and smothered her with a blanket.   The couple's upstairs neighbors overheard the commotion and called the police.   Corporal Nevada Krinkee arrived on the scene, heard a thud and a scream, then knocked on the door and announced himself.   K.W. answered the door, and Corporal Krinkee entered the apartment.   Corporal Krinkee directed Mr. Jackson and K.W. to separate areas of the apartment while they waited for a second officer to arrive on the scene.   When the second officer arrived, he took Mr. Jackson into the hall and Corporal Krinkee spoke to K.W. in the living room.

[¶4]    Initially, K.W. reported that Mr. Jackson had arrived home drunk and had shoved her.   Corporal Krinkee did not believe her initial statement.   As he questioned her, K.W.'s story evolved.   About ten minutes after Corporal Krinkee arrived at the apartment, K.W. fully disclosed her version of the night's events.   She reported that Mr. Jackson arrived home from the bar, went into the bedroom, and accused her of cheating on him with a friend. Mr. Jackson then went to the kitchen and after several minutes returned, threw the blankets off K.W. and onto the floor, and when K.W. stood to retrieve them, he pushed her back onto the bed with his hands around her neck and his thumbs pushing into the underside of her jaw.   K.W. asserted that she could not breathe and felt a throbbing pain

1

around her neck. This happened three times. Mr. Jackson also placed the blankets over K.W.'s head, making it difficult for her to breathe. He then discovered K.W.'s phone and took it to the kitchen. K.W. chased after him, smacked the phone out of his hand, and picked it up. As she backed out of the kitchen, Corporal Krinkee knocked on the door.

[¶5]    Corporal Krinkee took photos of K.W.'s injuries, including a mark under her chin and bruises on her arms. He arrested Mr. Jackson, who was charged with strangulation of a household member. The circuit court ordered Mr. Jackson to have no contact with K.W. Despite this order, Mr. Jackson called K.W. twice. K.W. did not answer Mr. Jackson's first call, but she did speak to him when he called later in the day. In the jailhouse recording, she told Mr. Jackson that they were not supposed to be talking and Mr. Jackson said:

> Okay. So I just wanted to let you know like this is really bad for me, really bad. So, I'm not sure what you told those guys but it's really bad for me. Griz [his dog] will be gone. I won't have a job left. I'll probably have to sell the truck. At least my house is rented maybe that will still be there. I just wanted to let you know, I'm not sure what you said, but it's way bad. And everything else goes without saying. You know I am obviously sorry as [expletive] and everything else. But thanks for getting it. I don't know who you've talked to otherwise. Anyone?

The pair then talked for a few more seconds about who K.W. had spoken with and her injuries. Then she indicated again they were not supposed to be speaking, and they hung up. Mr. Jackson then called a friend and admitted he had called K.W. even though he was under a no-contact order.

[¶6]    The State filed a pretrial notice that it intended to introduce the phone calls and the fact Mr. Jackson made them in violation of a no-contact order. The State argued that the evidence was admissible as "post-crime guilty mind evidence" and therefore not subject to W.R.E. 404(b), but asserted it was admissible even if the court determined Rule 404(b) applied. At the first pretrial conference, the district court proposed excluding the existence of the no-contact order to avoid the Rule 404(b) issue. The State opposed this suggestion, arguing Mr. Jackson's violation of the no-contact order was "guilty-mind evidence" and therefore outside Rule 404(b), and "among the State's more probative evidence." Mr. Jackson objected to the admission of the recorded phone calls, but, despite making a propensity argument, agreed they were not subject to Rule 404(b). The district court took the issue under advisement and, at the second pretrial conference, ruled in the State's favor and undertook a brief 404(b) analysis despite both parties stating it did not apply. The district court allowed the evidence that Mr. Jackson violated a no-

2

contact order when he called K.W., but excluded Mr. Jackson's contempt of court conviction.

[¶7]   The State also filed a pretrial notice that it intended to introduce Corporal Krinkee's bodycam video of K.W.'s statement.   It asserted the bodycam video was admissible under the excited utterance exception in W.R.E. 803(2).   Mr. Jackson preserved his objection to the evidence at the second pretrial conference and asserted the district court should determine the admissibility of the evidence when it was presented at trial.   At trial, both sides admitted parts of the bodycam footage.   At one point, the State moved to introduce a five-minute portion of Corporal Krinkee's bodycam video. Mr. Jackson objected and argued that it was misleading and the State should show the entire video.   The district court overruled the objection and said, "[I]f you want additional portions of that body-cam video to be admitted, you can do that on cross-examination. . . . There was some discussion at pretrial about the hearsay component of that.   And the Court finds that there's sufficient foundation that it qualifies as an excited utterance."   On cross-examination, Mr. Jackson's attorney questioned Corporal Krinkee about K.W.'s statements to him about her injuries.   The State objected to the questioning on hearsay grounds, and the district court overruled the objection because it had admitted the statements as excited utterances.

[¶8]   Mr. Jackson's theory was that he committed domestic battery, but not strangulation, because he did not impede K.W.'s breathing or circulation.   *Compare* Wyo. Stat. Ann. § 6-2-511(a) (LexisNexis 2019) ("A household member is guilty of domestic battery if he knowingly or recklessly causes bodily injury to another household member by use of physical force.") *with* Wyo. Stat. Ann. § 6-2-509(a) ("A person is guilty of strangulation of a household member if he intentionally and knowingly or recklessly causes or attempts to cause bodily injury to a household member by impeding the normal breathing or circulation of blood.").   The jury convicted Mr. Jackson of strangulation of a household member, and the district court sentenced him to three to five years in prison.   Mr. Jackson appeals.

## *DISCUSSION*

### I.   *Mr. Jackson Was Not Prejudiced by the Admission of the Recorded Phone Calls*

[¶9]   Prior to trial, the State filed notice of its intent to introduce Mr. Jackson's jailhouse phone calls, including the fact that they were made in violation of a no-contact order, as evidence at trial.   The State, citing *Palmer v. State*, 2009 WY 129, 218 P.3d 941 (Wyo. 2009), argued the calls were "guilty-mind" evidence and therefore not subject to a 404(b) *Gleason* analysis, and Mr. Jackson agreed with the State's assertion.   The district court recognized the potential 404(b) problem and conducted an abbreviated analysis of the issue: "In conducting the 404(b) analysis, the Court finds that the evidence is being offered for a proper purpose, that is, state of mind of guilt, that the evidence is relevant,

and the probable value is not substantially outweighed by the unfair prejudice." At oral argument on appeal, Mr. Jackson's counsel argued that trial counsel on both sides misapplied the *Palmer* analysis and suggested that the jailhouse phone calls should have been subjected to a 404(b) analysis. Mr. Jackson asked this Court to clarify whether *Palmer* excluded all "guilty-mind" evidence from a 404(b) analysis. We take this opportunity to do so.

## A. *Palmer*, Rule 404(b), and Consciousness of Guilt Evidence

[¶10]  "A core principle of Wyoming Rule of Evidence 404(b) 'is that the defendant in a criminal case should not be convicted because he is an unsavory person, nor because of past misdeeds, but only because of his guilt of the particular crime charged.'" *Blanchard v. State*, 2020 WY 97, ¶ 18, 468 P.3d 685, 691 (Wyo. 2020) (quoting *Vinson v. State*, 2020 WY 93, ¶ 17, 467 P.3d 1009, 1012 (Wyo. 2020)).  To protect against this, the State is required to give notice of its intent to use 404(b) evidence. *Gutierrez v. State*, 2020 WY 150, ¶ 4, 477 P.3d 528, 530 (Wyo. 2020).  This notice then triggers a *Gleason* hearing in which the district court must follow "a mandatory procedure . . . for testing the admissibility of 404(b) evidence." *Putnam v. State*, 2020 WY 133, ¶ 31, 474 P.3d 613, 622 (Wyo. 2020).  To be admissible:

> (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice; and (4) upon request, the trial court must instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.

*Id.* (quoting *Moser v. State*, 2018 WY 12, ¶ 21, 409 P.3d 1236, 1243-44 (Wyo. 2018)).

[¶11] In *Palmer*, we excluded certain instances of "guilty-mind," also called "consciousness of guilt," evidence from the 404(b) analysis.  There, the State proffered evidence from a witness that Mr. Palmer and another party asked the witness to provide a false alibi for Mr. Palmer. *Palmer*, 2009 WY 129, ¶ 10, 218 P.3d at 944.  The State asserted the evidence was not character evidence under Rule 404(b), but rather "guilty-mind" evidence. *Id*. at ¶ 13, 218 P.3d at 945.  We held, the "W.R.E. 404(b) analysis does not apply to post-crime 'guilty mind' evidence *such as* that offered by the State in the instant case." *Id*. (emphasis added).  *Palmer* did not place *all* "guilty-mind" or "consciousness of guilt" evidence outside the 404(b) framework.

[¶12]  Wyoming Rule of Evidence 404(b) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.  It may, however, be admissible for other purposes."  Not all

4

guilty-mind evidence is evidence of "other crimes, wrongs, or acts" and therefore may not require 404(b) analysis.  However, guilty-mind evidence may also be evidence of other crimes, wrongs, or acts.  In those circumstances, other jurisdictions categorize "guilty-mind," or "consciousness of guilt" evidence as a proper purpose to be analyzed under Rule 404(b).  *See, e.g.*, *United States v. Cordero*, 973 F.3d 603, 619 (6th Cir. 2020) (Threat of violence against a witness was admissible under Rule 404(b) to show consciousness of guilt); *United States v. Almeida*, 748 F.3d 41, 51-52 (1st Cir. 2014) (upholding district court's decision that defendant's use of false identification was admissible under Rule 404(b) as consciousness of guilt); *United States v. Simmons*, 470 F.3d 1115, 1125 (5th Cir. 2006) (defendant's state-court testimony was admissible under Rule 404(b) because it was admitted to show consciousness of guilt, not that he "was a bad person, and, therefore, must have [committed the crime]"); *United States v. Hayden*, 85 F.3d 153, 159 (4th Cir. 1996) ("Evidence of witness intimidation is admissible to prove consciousness of guilt and criminal intent under Rule 404(b)."); *United States v. Mickens*, 926 F.2d 1323, 1329 (2nd Cir. 1991) ("[T]he standards for admission of Rule 404(b) evidence were satisfied.  The testimony . . . was not offered to prove Mickens' bad character or criminal propensity, but rather to prove his consciousness of guilt."); *see also* 1 McCormick On Evid. § 190.5 (8th ed.), Westlaw (database updated January 2020) ("[A] variation of the reasoning permits proof of a consciousness of guilt as evidenced by criminal acts of the accused that are designed to obstruct justice or to avoid punishment.").  We join the jurisdictions that consider "consciousness of guilt," or "guilty-mind" evidence a proper purpose under Rule 404(b).   If the State proposes using evidence of "other crimes, wrongs, or acts" to show the defendant's "consciousness of guilt" it must give notice of that intent and the court must apply the standard *Gleason* analysis.

## B.    Standard of Review

[¶13]  Mr. Jackson filed a pretrial demand for notice of the State's intent to use 404(b) evidence.  Therefore, we review first for an abuse of discretion.  *Mitchell v. State*, 2020 WY 142, ¶¶ 20-21, 476 P.3d 224, 232 (Wyo. 2020).  Here, because the parties argued the evidence fell outside Rule 404(b), the district court only made a cursory 404(b) ruling[1]

---

[1] In his written appeal, Mr. Jackson argued the district court erred when it admitted evidence that he violated a no-contact order when he called K.W. because it was irrelevant and prejudicial under W.R.E. 401 through 403.  During oral argument, we asked Mr. Jackson's counsel whether Rule 404(b) applied to this case and he said, "I do think it's a 404(b) analysis.  I do think the court did kind of apply a 404(b) analysis."  *See Bourke v. Grey Wolf Drilling Co., LP*, 2013 WY 93, ¶ 42 n.8, 305 P.3d 1164, 1174 n.8 (Wyo. 2013) (declining to address potential venue issue because it was not briefed and neither party "conceded or contended that the objection to venue was waived when they were asked about that possibility at oral argument").  Because the district court did "kind of apply a 404(b) analysis," and because we conclude the evidence should have been analyzed under W.R.E. 404(b), and counsel asserted at oral argument that Rule 404(b) should apply, we discuss it under that rule.  The W.R.E. 401 through 403 relevancy and balancing tests are the second and third elements of the 404(b) analysis.  *Putnam*, 2020

5

and did not review any of the *Gleason* factors.[2]  "Our task in reviewing a district court's decision on the admissibility of uncharged misconduct evidence is to determine whether the district court abused its discretion, not to apply the *Gleason/Vigil* [*v. State*, 926 P.2d 351 (Wyo. 1996)] test anew."  *Miller v. State*, 2021 WY 16, ¶ 17, 479 P.3d 387, 392 (Wyo. 2021).  The district court identified "state of mind of guilt" as the proper purpose but did not evaluate the factors.  "[A]buse of discretion, or the lack thereof, cannot be determined by reviewing a record that contains no information as to how that discretion was exercised."  *Cercy v. State*, 2019 WY 131, ¶ 39, 455 P.3d 678, 691 (Wyo. 2019) (quoting *Gleason*, 2002 WY 161, ¶ 28, 57 P.3d 343).  Because the district court made a 404(b) ruling without examining the *Gleason* factors, our inquiry turns to whether Mr. Jackson was prejudiced by the admission of the 404(b) evidence.  *Miller*, 2021 WY 16, ¶ 17, 479 P.3d at 392.  "[A]n error is prejudicial when 'there is a reasonable

---

WY 133, ¶ 31, 474 P.3d at 622.

[2] The *Gleason* factors are:

> 1.  How clear is it that the defendant committed the prior bad act?
> 2.  Does the defendant dispute the issue on which the state is offering the prior bad acts evidence?
> 3.  Is other evidence available?
> 4.  Is the evidence unnecessarily cumulative?
> 5.  How much time has elapsed between the charged crime and the prior bad act?
> . . . The trial court should [then] weigh [the following] factors against the probative value of the evidence:
> 1.  The reprehensible nature of the prior bad act. The more reprehensible the act, the more likely the jury will be tempted to punish the defendant for the prior act.
> 2.  The sympathetic character of the alleged victim of the prior bad act. Again, the jury will be tempted to punish the defendant for the prior act if the victim was especially vulnerable.
> 3.  The similarity between the charged crime and the prior bad act.  The more similar the acts, the greater is the likelihood that the jury will draw the improper inference that if the defendant did it once, he probably did it again.
> 4.  The comparative enormity of the charged crime and the prior bad act.  When the prior act is a more serious offense than the charged crime, the introduction of that act will tend to place the defendant in a different and unfavorable light.
> 5.  The comparable relevance of the prior bad act to the proper and forbidden inferences.  Evidence of the prior bad act may be much more probative of bad character than it is of any legitimate inference permitted by Rule 404(b).
> 6.  Whether the prior act resulted in a conviction.  The jury may be tempted to punish the defendant if they believe he escaped punishment for the prior bad act.

*Lajeunesse v. State*, 2020 WY 29, ¶ 11, 458 P.3d 1213, 1218 (Wyo. 2020) (quoting *Gleason v. State*, 2002 WY 161, ¶ 27, 57 P.3d 332, 342-43 (Wyo. 2002)).

probability that the result would have been more favorable to the defendant had the error not occurred.'" *Id*. at ¶ 18, 479 P.3d at 392 (quoting *Mitchell*, 2020 WY 142, ¶ 21, 476 P.3d at 232).

## C. No Prejudice

[¶14] Mr. Jackson does not argue that the calls were inadmissible. Rather, he asserts he was prejudiced when the State introduced evidence he violated a no-contact order when he called K.W. from jail. To support his argument, Mr. Jackson points to the number of times the State referenced the no-contact violation and the State's statement at the pretrial conference that it was "among the State's more probative evidence." He does not, however, explain how there is a reasonable probability the result would have been more favorable to him without the evidence.

[¶15] There was plenty of other evidence to support the jury's conviction. K.W. testified in detail about Mr. Jackson strangling her, the upstairs neighbors testified about what they overheard, including Mr. Jackson's statement, "How about I [expletive] strangle you," multiple witnesses testified about K.W.'s injuries and the State introduced photographs of the injuries, the nurse practitioner who examined K.W. at urgent care testified that the carotid artery was located underneath the visible abrasions on K.W.'s neck, and the State introduced a recorded phone call in which Mr. Jackson admitted he grabbed K.W. by the neck. Considering the record, there is no reasonable probability the verdict would have been more favorable to Mr. Jackson without the evidence that he violated a no-contact order when he called K.W. from jail.

## II. The District Court Did Not Err by Admitting the Bodycam Video as an Excited Utterance

## A. Standard of Review

[¶16] The parties disagree about whether we should apply an abuse of discretion or a plain error standard. The State filed a pretrial notice of intent to introduce W.R.E. 803(2) excited utterance evidence and analyzed the five factors. At the second pretrial conference, the State discussed the factors and asserted the purpose of the filing was to give notice so the court was prepared to rule on the issue at trial. Mr. Jackson lodged a general objection to the evidence, stating: "[W]e would prefer to reserve our objection. We will raise an objection to the evidence that the State wants to introduce in their notice here." The district court assured the parties it would review the evidence before the trial. At trial, the State moved to introduce a five-minute portion of the bodycam footage rather than the entire video. Mr. Jackson objected on completeness grounds and the district court ruled: "Based on that objection, Exhibit 26 is admitted. There was some discussion at pretrial about the hearsay component of that. And the Court finds that there's sufficient foundation that it qualifies as an excited utterance. So 26 is admitted."

7

[¶17]   Because Mr. Jackson did not object on hearsay grounds at trial we would normally review for plain error.  *Gutierrez*, 2020 WY 150, ¶ 5, 477 P.3d at 530.  Plain error review is premised on the idea that, "[w]ithout a proper objection, the district court did not have an opportunity to address and, if appropriate, correct the error."  *Buszkiewic v. State*, 2018 WY 100, ¶ 33, 424 P.3d 1272, 1282 (Wyo. 2018).  Further, "[i]t is a basic premise of appellate practice that to preserve an issue for appeal, that issue must be called to the attention of the trial court in a clear manner."  *Cowboy's LLC v. Schumacher*, 2018 WY 61, ¶ 16, 419 P.3d 498, 503 (Wyo. 2018) (citations omitted).  Here, the excited utterance issue was clearly called to the district court's attention.  The State thoroughly briefed the issue, Mr. Jackson lodged a general objection to the evidence at the second pretrial conference, the district court was fully apprised of the excited utterance argument, and it ruled the bodycam footage qualified as an excited utterance when the State moved to admit it at trial.  Thus, in this case, we review for an abuse of discretion.  *See Garland v. State*, 2017 WY 102, ¶ 17, 401 P.3d 480, 485 (Wyo. 2017) (quoting 1 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 1:10 (4th ed. 2013)) (a party who lodged an objection pretrial does not need to renew the objection if the court entered a definitive ruling either pretrial or during the trial).

## B.     W.R.E. 803(2) Excited Utterance

[¶18]   "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  W.R.E. 801(c).  Generally, hearsay is inadmissible.  W.R.E. 802.  However, there are several exceptions to the general rule, including W.R.E. 803(2), which permits excited utterances.  An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."  W.R.E. 803(2).  This Court has identified five factors courts should consider when applying the excited utterance exception: "(1) the nature of the startling event; (2) the declarant's physical manifestation of excitement; (3) the declarant's age; (4) the lapse of time between the event and the hearsay statement; and (5) whether the statement was made in response to an inquiry."  *Bruce v. State*, 2015 WY 46, ¶ 48, 346 P.3d 909, 924 (Wyo. 2015) (citations omitted).

[¶19]   Review of the bodycam footage reveals that the first factor weighs in favor of admission.  K.W. was the victim of a violent crime that took place in her own home.  Mr. Jackson asserts the second factor weighs against admission because K.W. shows little emotion for the first four to five minutes of the video.  However, K.W. visibly exhibits more emotion as her discussion with Corporal Krinkee continues and she tells him more about the full scope of the altercation with Mr. Jackson.  By the time she explains the strangulation, K.W. is crying and rocking on the sofa.  Thus, the second factor weighs toward admission.  The third factor is neutral.  *Sanchez v. State*, 2011 WY 77, ¶ 23, 253 P.3d 136, 143 (Wyo. 2011).   The fourth factor also weighs toward

admission. While it is unclear how much time passed between when Mr. Jackson strangled K.W. and her statement to Corporal Krinkee, it is undisputed that the altercation between K.W. and Mr. Jackson was ongoing and only stopped when Corporal Krinkee knocked on the door. *Bruce*, 2015 WY 46, ¶ 50, 346 P.3d at 925.

[¶20] The fifth factor weighs against admission. K.W. made her full statement only after extended questioning from Corporal Krinkee, when he made it clear he did not believe K.W.'s initial statements. When K.W. finally told her full story, she described what Mr. Jackson did, but did not say she could not breathe until Corporal Krinkee suggested it with a leading question. Further, it was Corporal Krinkee, not K.W., who described Mr. Jackson's actions as "strangulation." This is different than the open-ended questioning in other cases and more akin to "detailed interrogation-style questioning that might negate the use of the excited utterance exception." 30B Fed. Prac. & Proc. Evid. § 6819, Westlaw (database updated April 2021); *Compare Sanchez*, 2011 WY 77, ¶ 23, 253 P.3d at 143 (no indication victim's statements were in response to the officer's inquiry); *Boykin v. State*, 2005 WY 15, ¶ 10, 105 P.3d 481, 484 (Wyo. 2005) (The victim's non-responsive answer to the clerk's inquiry suggested her response was spontaneous and not the result of reflection.); *Oldman v. State*, 998 P.2d 957, 963 (Wyo. 2000) (finding that the fifth factor weighed in favor of admission because the victim made her statement before the doctor asked any questions); *Dike v. State*, 990 P.2d 1012, 1022 (Wyo. 1999) ("[M]any of the victim's statements were not really in response to the dispatcher's inquiries, and it appears that the questioning was really an attempt by the dispatcher to calm the victim."); *with United States v. Frost*, 684 F.3d 963, 973-75 (10th Cir. 2012) (suggesting that officer's detailed questioning asking the victim to walk him through what happened, as opposed to simply asking "what happened," indicates a lack of spontaneity but not significantly enough to satisfy plain error), *overruled on other grounds by United States v. Bustamante-Conchas*, 850 F.3d 1130 (10th Cir. 2017).

[¶21] Here, though the fifth factor weighs against admission, the first, second, and fourth factors weigh in its favor. Further, while the factors are a helpful tool, the ultimate inquiry "remains whether the 'declarant's condition at the time was such that the statement was spontaneous, excited or impulsive rather than the product of reflection and deliberation.'" *Bruce*, 2015 WY 46, ¶ 48, 346 P.3d at 924 (quoting *Sanchez*, 2011 WY 77, ¶ 22, 253 P.3d at 143). The video shows that K.W. was very upset when she responded to Corporal Krinkee's questions. While her answers occurred in response to his questioning, they appear spontaneous rather than the result of reflection. The district court could reasonably find the statement was an excited utterance. Therefore, it did not abuse its discretion.

### III. No Cumulative Error

[¶22] Mr. Jackson argues that the combination of the two issues results in prejudicial error, even if the issues on their own do not. "Cumulative error occurs when two or more

nonreversible errors have the potential to prejudice the defendant to the same extent as a single reversible error." *McGill v. State*, 2015 WY 132, ¶ 21, 357 P.3d 1140, 1148 (Wyo. 2015) (citing *McClelland v. State*, 2007 WY 57, ¶ 27, 155 P.3d 1013, 1022 (Wyo. 2007)). "In conducting a cumulative error evaluation, we consider only matters that we have determined to be errors." *Bogard v. State*, 2019 WY 96, ¶ 69, 449 P.3d 315, 332 (Wyo. 2019) (quoting *Guy v. State*, 2008 WY 56, ¶ 45, 184 P.3d 687, 701 (Wyo. 2008)). Here, we found that Mr. Jackson was not prejudiced by the admission of the "guilty-mind" evidence, and the district court did not err when it admitted the bodycam video as an excited utterance. Thus, there is no basis for Mr. Jackson's claim of cumulative error.

## *CONCLUSION*

[¶23] Mr. Jackson was not prejudiced by the introduction of evidence that he violated a no-contact order when he called the victim and the district court did not abuse its discretion when it admitted the bodycam video as an excited utterance. Finding no error occurred, there is no basis for Mr. Jackson's cumulative error claim. Affirmed.